**In the Matter of I. B., et al., Appellants,**

**v.**

**DISTRICT OF COLUMBIA DEPARTMENT OF HUMAN RESOURCES, SOCIAL SERVICES ADMINISTRATION, Appellee.**

**No. 6017.**

District of Columbia Court of Appeals.

Argued Jan. 18, 1972.

Decided Feb. 23, 1972.
Rehearing Denied April 6, 1972.

---

Peter J. Hoagland, Washington, D. C., with whom Lawrence H. Schwartz, Public Defender Service, Washington, D. C., was on brief, for appellants.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on brief, for appellee.

Before NEBEKER, PAIR and YEAG-LEY, Associate Judges.

NEBEKER, Associate Judge:

These juvenile appellants seek reversal of an order dismissing their petition for writ of habeas corpus filed in the Superior Court of the District of Columbia. Each was originally determined to be a "dependent" child under provisions of a now super-seded law.[1] In their petition for the writ they challenged the sufficiency of a recent nontestimonial hearing which apparently looked anew into their present status. The particular assertion in the petition, and also here, is that the trial court's review of their status, resulting in a determination that appellants were persons in need of supervision (PINS),[2] lacked the procedural rights guaranteed in de novo determinations of juvenile status as prescribed by applicable provisions of the District of Columbia Court Reorganization Act of 1970.[3]

We first turn to the question of jurisdiction to entertain the writs. We were informed at oral argument that appellant And. C. wished to withdraw his appeal because the jurisdiction over him by the Family Division of the Superior Court had been terminated. Accordingly, his appeal will be shown to be dismissed in our mandate. Similarly, this court finds that appellant C.W.S.'s appeal is moot because the Superior Court's jurisdiction over him has also terminated.[4]

Appellants Ant. C., M.H., C.J., and C.P. are all presently outside the territorial jurisdiction of this court, being confined either to the Maple Glen (PINS) facility at Laurel, Maryland, or, in the case of C.P., within a Maryland home. The requirements of D.C.Code 1967, § 16–1901 (Supp. IV, 1971), explicitly state that a person be "committed, detained, confined, or restrained from his lawful liberty *within the District*" (emphasis supplied) before writ of habeas corpus may be entertained by the District of Columbia courts. Moreover, the Supreme Court has required that the jurisdictional prerequisites imposed on habeas corpus be construed literally. Ahrens v. Clark, 335 U.S. 188, 68 S.Ct. 1443, 92 L.Ed. 1898 (1948). *See also* McAffee v.

1. D.C.Code 1967, § 11–1551.

2. D.C.Code 1967, § 16–2301(8) (Supp. IV, 1971).

3. D.C.Code 1967, §§ 16–2305, –2306(a), –2308, –2316, –2317 (Supp. IV, 1971);

and SCR—Juvenile, Rules 7(c), 10, 32, 43.

4. We conclude mootness exists on this record as to And. C. and C.W.S. because of the limited nature of the attack in the petition for the writ.

Clemmer, 84 U.S.App.D.C. 57, 171 F.2d 131 (1948); Thompson v. District of Columbia, D.C.Mun.App., 158 A.2d 687 (1960). We therefore hold that the trial court was without jurisdiction to entertain the petition for writ of habeas corpus on behalf of these appellants. In passing we note that these appellants are not remediless should they wish to challenge the legality of the fact or the manner of their detention.[5]

As for appellant I.B., her confinement at the Youth Shelter House for Girls in Washington, D. C. places her within the territorial jurisdiction of the District of Columbia courts. She was originally committed to the custody of the Department of Public Welfare as a "dependent" child.[6] After an unsuccessful placement in Junior Village, I.B. was transferred to the Children's Center at Laurel, Maryland, where she was ultimately placed in the Cedar Knoll ("delinquent" child) facility.

On the effective date of the District of Columbia Court Reorganization Act of 1970, new procedures governing juvenile proceedings and detention were imposed. One judge of the trial court became aware of the fact that some juveniles confined at Cedar Knoll had been orginally committed as "dependent" children under the superseded law. Because of a prohibition against commingling under the new law (D.C.Code 1967, § 16–2320(b) (Supp. IV, 1971)), that judge, sua sponte, and apparently orally, ordered a hearing for these juveniles, including I.B. That hearing commenced before another judge without the court or the parties involved further delineating the issues to be resolved. No pleadings were filed and it is not apparent that anyone knew precisely which party had what bur-

den. The hearing judge undertook to review both the legal and social files of I.B. and the other appellants. The hearing was nontestimonial, with only counsel present. It appears, however, that all concerned were attempting to find the most practical classification and place of detention for the juveniles. Their counsel (not present counsel) agreed that a PINS status was now appropriate. The hearing judge determined I.B.'s status should be that of a PINS. After the hearing she was sent to the Maple Glen facility in Maryland, after which she was transferred to the Youth Shelter House for Girls in Washington, D. C., where she presently resides.

█ In treating the contention that the hearing did not comport with procedures applicable to a de novo status determination under the new Act, we do not agree that the new Act automatically required a new determination of status for previously committed juveniles. The creation of the right forbidding commingling[7] cannot be viewed as invalidating earlier status determinations and commitments which carry a presumption of validity. To place the burden on the government to bring forth evidence sufficient to reestablish the Superior Court's jurisdiction for continued commitment would not be consistent with the continuing jurisdiction concept expressed in D.C.Code 1967, § 11–921(a) (1) (Supp. IV, 1971), in the new Act. We have earlier held that the District of Columbia Court Reorganization Act of 1970 was not intended to cause general disruption of the status quo respecting matters previously within the jurisdiction of the Juvenile Court and that continuity of judicial administration must be maintained. Cupo v. District of

---

5. See D.C.Code 1967, § 11–921(a) (1) (Supp. IV, 1971), which continues jurisdiction of juvenile court matters. Cf. Cupo v. District of Columbia, D.C.App., 285 A.2d 696 (1972). See also 28 U.S.C. § 2241 et seq. (1970) (habeas corpus); D.C.Code 1967, § 11–921(a) (2) (Supp. IV, 1971) (equity injunctive relief); and Super.Ct.Civ.Rule 57 (declaratory judgment; see Spock v. District of Columbia, D.C.App., 283 A.2d 14, 20 n. 16 (1971)).

6. Juveniles were previously determined to be either "dependent" or "delinquent".

7. The prohibition against commingling applies to juveniles previously committed as dependents and other remedies are available to enforce the right. See note 5, supra. See also D.C.Code 1967, § 16–1901 (Supp. IV, 1971) for persons confined in the District of Columbia.

Columbia, D.C.App., 285 A.2d 696 (decided January 6, 1972).

■ Accordingly, the challenged hearing was one not required by law and for that reason the petition for the writ of habeas corpus was properly dismissed as to I.B. She, and the other appellants, must be viewed as continuing in the status previously determined by the Juvenile Court. Should there be a basis to attack any aspect of her detention, or that of the other appellants, an appropriate action delineating the issues may be commenced. *See* footnote 5, *supra*.

The dismissal of the petition for writ of habeas corpus as to I.B. was therefore proper and is affirmed. As to appellants And. C. and C.W.S., their appeals are dismissed as moot. The dismissals of the writ as to Ant. C., M.H., C.J., and C.P. are affirmed for want of habeas corpus jurisdiction.

So ordered.