347 A.2d 924 (1975)
In the Matter of N. M. S.
No. 8288.
District of Columbia Court of Appeals.
Argued July 8, 1975.
Decided December 8, 1975.
*925 C. Frederick Ryland, law student counsel, with whom Susan M. Chalker, Washington, D.C., appointed by this court, was on the brief, for appellant mother.
Ralphine R. Staring, Washington, D.C., for N. M. S.
Robert P. Hudock, McLean, Va., for the foster parents.
Before KELLY and FICKLING, Associate Judges, and HOOD, Chief Judge, Retired.
PER CURIAM:
There are three parties to this appeal: (1) a young girl (the child) 9½ years of age at the time of the hearing in the trial court; (2) the mother of the child who, when the child was 4 days old, consented to commitment of the child to the Child Welfare Division of the District of Columbia Department of Public Welfare because she felt that for financial and other reasons she was temporarily unable to care for the child;[1] and (3) a man and wife (the foster parents) in whose care the Welfare Division had placed the child and with whom the child has lived since she was 8 days old.
Approximately 10 months after the child was born, the Welfare Division filed a formal complaint alleging the child was homeless and that the mother had failed to make a plan for her care and support. At a hearing at which the mother was present, the Juvenile Court found the child to be a dependent child and committed the child to the custody of the Welfare Division for an indeterminate period.[2] Thereafter ex parte reviews of the initial commitment were conducted annually and the child continued in the custody of the Social Rehabilitation Administration (SRA), successor to the Child Welfare Division. As indicated above, the child continued to live with the foster parents.
*926 Over the years the mother visited the child and the child, when older, visited the mother. From time to time the mother discussed with SRA in a vague way the eventual return of the child to her but took no definite steps to that end. Each year SRA in its report recommended the commitment be continued, but in August 1973, when the child was slightly over 9 years of age, SRA in its report stated that "it feels that it would be in [the child's] best interest to return to her natural mother."[3] The foster parents opposed SRA's recommendation and asked the court to award custody of the child to them, offering to assume the financial obligation of caring for the child which previously had been paid by SRA. They engaged counsel to represent them and the court appointed counsel for the child. Before and at the hearing the child expressed her desire to stay with the foster parents. At the hearing there were four parties, each represented by counsel: SRA, the child, the mother and the foster parents. SRA has taken no part in this appeal.
There was some uncertainty by the court and the parties as to the exact nature of the hearing. The court was of the opinion that the hearing was technically a review of the commitment of the child to SRA and that it was necessary to determine if the child was or continued to be a "neglected child" within the meaning of D.C. Code 1973, § 16-2301(9), a part of the Court Reorganization Act of 1970, not in existence when the child was originally committed.[4]
We think the name given the hearing is immaterial. The purpose of the hearing was clear. After 9 years of commitment of the child to its custody, SRA sought to be relieved of that custody by returning the child to her mother. The mother favored  in fact demanded  return of the child. The foster parents sought legal custody of the child that had been in their actual custody for practically her entire life. The central figure in the controversy, the child herself, did not wish to leave the home of her foster parents. The court was faced with a very practical situation, not a legal problem, namely, what disposition to make of the child. Having been previously adjudged a "dependent child", the child continued in that status and there was no necessity for a "neglected child" finding. I. B. v. District of Columbia Dep't of Human Resources, Social Services Administration, D.C.App., 287 A. 2d 827 (1972). We hold that the trial court had the authority under its continuing jurisdiction over the child to hear and determine the question of further disposition of the child.
At a hearing lasting four days the court, obviously concerned about making a decision so important to both mother and child, patiently heard all relevant and some irrelevant evidence presented by the parties, including the testimony of the mother, the child, the foster parents, social workers, a psychologist, a psychiatrist, the mother's pastor, her sister, and the child's half brother. Counsel were permitted to argue and to file memoranda. Thereafter, in a written opinion of considerable length the court summarized the evidence and concluded that:
[T]he best interests of this child would not be served by removing her from this warm and happy home she has known all her life ... to place her in an environment where she feels uncomfortable and anxious, to live in a place she does not want to live and with a woman more an acquaintance than a mother....
*927 On the basis of its findings and conclusions the court ordered that commitment of the child to SRA be terminated and that legal custody be given the foster parents. The mother was given the right to visit the child every six weeks.
In reaching its decision the court expressly stated it did not find the mother to be unfit "in a material sense" and did not find that the foster parents were "more fit" than the mother. The court stated that its ultimate decision was reached on the basis of "the best interests" of the child and the child only; that the mother was "unfit to care for [the child's] mental [and] emotional ... needs", and that the child's "mental and emotional health will be adversely affected were she to return to live with her mother."
On this appeal the mother makes essentially one claim of error. She asserts that a mother cannot have custody of her child removed by the state except upon an affirmative finding of parental unfitness. Secondary to that claim is the claim that it was error for the court to be guided solely by the "best interest" of the child and thus ignore the interest of the mother.
Undoubtedly a mother has the strongest claim to custody of her child and ordinarily cannot be deprived of that custody except upon a showing that she is unfit or unable to care for the child. Here, however, the mother is seeking to regain  not retain  custody. She voluntarily surrendered custody when the child was a few days old and for nine years made no real effort to regain custody. In that period of time, as the trial court found, the child had found a "warm and happy home" with the foster parents and she preferred to remain in that home where she "has thrived extremely well."
We decline to struggle with the abstract question of whether the right of a fit parent is subordinate to the best interest of the child.[5] We say "abstract" because there are many varying degrees of fitness, and best interest is hardly an expression of precise meaning. In this jurisdiction there are cases indicating that the parent's right is superior.[6] Other cases indicate that the best interests of the child is controlling.[7] Probably the holdings can be reconciled by the differing factual situations or perhaps on the proposition that ordinarily a child's best interest is served by being with a fit parent.
Under the factual situation here presented we hold that the trial court was correct in holding that the controlling factor in its decision was the best interest of the child, and we cannot hold the court was in error in deciding that, subject to further order of the court, the child should remain with the foster parents.
Affirmed.
NOTES
[1] The mother had three other illegitimate children, the oldest of whom, a boy, lives with the mother. The other two live with adoptive parents.
[2] The determination and commitment were made in compliance with the then applicable law. D.C.Code 1961, §§ 11-1551, 16-2308 (Supp. III, 1964).
[3] The trial court found that SRA recommended return of the child to the mother primarily because the mother requested such return and threatened SRA with a lawsuit.
[4] Under previous procedure the term "dependent child" was used. See I. B. v. District of Columbia Dep't of Human Resources, Social Services Administration, D.C.App., 287 A.2d 827 (1972); In re Elmore, 127 U.S.App. D.C. 176, 382 F.2d 125 (1967).
[5] See, e.g., the majority, concurring and dissenting opinions in In re Guardianship of Smith, 42 Cal.2d 91, 265 P.2d 888 (1954).
[6] Johnson v. Lloyd, D.C.App., 211 A.2d 764 (1965); Jackson v. Fitzgerald, D.C.Mun. App., 185 A.2d 724 (1962); Davis v. Jurney, D.C.Mun.App., 145 A.2d 846 (1958); Bell v. Leonard, 102 U.S.App.D.C. 179, 251 F.2d 890 (1958).
[7] Cooley v. Washington, D.C.Mun.App., 136 A.2d 583 (1957); In re Lambert, D.C.Mun. App., 86 A.2d 411 (1952); Holtsclaw v. Mercer, 79 U.S.App.D.C. 252, 145 F.2d 388 (1944).