**Samuel A. ARONSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 92–561.**

United States Court of Veterans Appeals.

Nov. 16, 1994.

As Amended Nov. 18, 1994.

Samuel A. Aronson, pro se.

Mary Lou Keener, Gen. Counsel, Norman G. Cooper, Asst. Gen. Counsel, R. Randall Campbell, Deputy Asst. Gen. Counsel, and Rudrendu Sinhamahapatra, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Judges.

NEBEKER, Chief Judge, filed the opinion of the Court. STEINBERG, Judge, filed a separate concurring opinion.

NEBEKER, Chief Judge:

This matter of recusal of a judge of this Court is before us on remand from the United States Court of Appeals for the Federal Circuit ("Federal Circuit"). This Court had refused to review Judge Ivers' refusal to recuse himself and the Federal Circuit vacat-

ed and remanded. *Aronson v. Brown,* 14 F.3d 1578 (Fed.Cir.1994). This Court then issued an order to the Secretary on March 14, 1994, to file a memorandum addressing the status of the underlying claim or claims and whether the issue of recusal in the extraordinary relief matter and that matter itself are moot and, if so, when they became moot. The appellant was told that if he so desired he could file a response to the Secretary's memorandum within thirty days thereafter. The Secretary has filed his memorandum, and the appellant has filed a response. We have reviewed the memorandum and the appellant's response thereto, and, having considered the Federal Circuit's mandate, our decision follows pursuant to that mandate. We conclude that the issue of recusal is now moot and was moot at the time of our earlier decision. Alternatively, and assuming that the Federal Circuit's decision is viable despite mootness, we hold that Judge Ivers was not required to recuse himself.

This matter began when the appellant appealed the Board of Veterans' Appeals (Board or BVA) decision denying him service connection for a left eye disability. That matter was docketed as No. 90–1346. In an order dated February 13, 1992, Judge Ivers, acting as a single judge pursuant to 38 U.S.C. § 7267, reversed the BVA decision and remanded the matter to (1) amend the 1954 rating decision to award service connection, and (2) "determine the appropriate rating for [the appellant], taking into account the change brought about by the enucleation of his left eye." On April 30, 1992, the appellant filed a petition for a writ of mandamus which raised the following issues: (1) the accuracy of the transcript of a hearing dated January 31, 1989; (2) "[t]he antagonistic reception at Seattle V.A. when this veteran applied for Benefits, and/or admit [sic] to V.A. Hospital, for residuals of 4 traumatizing episodes dating from 10 months after induction 1951 to date April 14, 1992"; (3) the fact that a "fee basis card" was not offered to him; (4) a request for VA disability compensation for, inter alia, trauma, anxiety, and loss of earnings plus interest; and (5) VA's failure to give him an eye examination for rating purposes.

Over the next two months, the appellant filed numerous addenda to his petition which, in addition to raising some or all of the concerns in his petition, also variously raised these issues: (1) the circulation of his records between Seattle and Washington, D.C.; (2) dissatisfaction with VA's slowness; (3) VA's April 1992 finding that his left eye was 30% disabled at induction; (4) his request that VA be held in contempt; (5) his belief that he should be awarded a grant of service connection for post-traumatic stress disorder retroactive to 1953; (6) his request that VA be sanctioned for its failure to comply with the Court's May 1992 order; (7) his request that the Court correct the award of 10% service connection which VA had granted him in April 1992; (8) the appellant's extreme anger and stress which he believed should be recognized as a secondary condition to his left eye condition and therefore compensated and treated by VA; and (9) his request that this Court cause VA to reimburse him for his medical and other expenses as listed by the appellant in his addendum.

On May 19, 1992, Judge Ivers ordered the Secretary to explain why VA had failed to conduct an examination for rating purposes pursuant to the Court's order. The Secretary responded to this order by stating that all the necessary evidentiary development was complete and that a 10% rating decision had been assigned in April. Judge Ivers, on July 7, 1992, issued an order stating that, if the appellant was not given an eye examination, he could appeal the April 1992 rating decision to the Board or seek an increased rating based on his current condition. Also in that order, Judge Ivers denied the appellant's petition for a writ of mandamus and addenda thereto because it did not meet the requirements of the All Writs Act, 28 U.S.C. § 1651.

The appellant then filed a motion for review of the denial of his petition for a writ of mandamus. Shortly after that, he also filed a motion for recusal of Judge Ivers from the panel to consider the motion for review because, the appellant argued, the fact that Judge Ivers was once General Counsel for VA was evidence of a bias. (Pursuant to the Court's internal practice, the single judge

was included in the three-judge panel.) Judge Ivers denied the appellant's motion for recusal. The appellant filed a timely motion to review Judge Ivers' refusal to recuse himself. On July 30, 1992, this matter was assigned to a panel consisting of Judges Mankin, Ivers, and Steinberg. On September 2, 1992, that panel issued an order denying both the appellant's motion to review the denial of the writ of mandamus and the motion to review Judge Ivers' decision not to recuse himself. By order dated October 23, 1992, the Court substituted Chief Judge Nebeker for Judge Ivers for purposes of the recusal issue only. The present panel issued an opinion on January 25, 1993, holding that this Court had no authority to review an individual judge's refusal to recuse himself. *Aronson v. Brown*, 4 Vet.App. 133 (1993). The appellant appealed that decision to the Federal Circuit, which vacated our dismissal of Mr. Aronson's motion for review, and remanded. *Aronson*, 14 F.3d at 1583.

In August and September 1992, and unknown to this Court and the Federal Circuit, VA complied with Judge Ivers' order of July 7, 1992, by giving the appellant two eye examinations. In October 1992, based on those eye examinations, the VA regional office (RO) awarded a rating of 10% and informed the appellant that he had 60 days in which to appeal this rating decision. (The VARO subsequently extended that time period in view of the issues still pending in this Court.) At this point, on October 9, 1992, the appellant's appeal before this Court became moot since VA had met all the directives of the February 13, 1992, remand. Thus, it appears that, had this Court or the Federal Circuit been advised that VA had awarded service connection and assigned a 10% rating for enucleation of the appellant's left eye, mootness of the controversy would have been recognized because the order of this Court had been fully satisfied and there remained nothing further for Judge Ivers or a panel of this Court to act on within the jurisdiction of this Court. Of course, Mr. Aronson can appeal the 10% rating decision to the Board as a separate matter, and we are advised he has done so.

■ As to Courts created under Article III of the Constitution, once a case on appeal is moot, the Court is divested of jurisdiction because there is no longer a case or controversy. "Article III requires that a plaintiff's claim be live not just when he first brings the suit but throughout the entire litigation, and once the controversy ceases to exist the Court must dismiss the case for lack of jurisdiction." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3rd Cir.1992) (citations omitted).

■ Under Article III, a Court has an independent duty to examine its own jurisdiction. *Aguirre v. S.S. Sohio Intrepid*, 801 F.2d 1185, 1189 (9th Cir.1986) ("Because mootness is an element of justiciability and raises a question as to our jurisdiction, we consider the matter *sua sponte.*" (citations omitted)); *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir.1985) (court under a duty to review its jurisdiction over an appeal at any point in the appellate process); *see also In re I.B. v. District of Columbia Dep't of Human Resources, Social Services Admin.*, 287 A.2d 827 (D.C.1972) (appeal in an Article I Court, the District of Columbia Court of Appeals, from denial of habeas corpus was moot where jurisdiction over appellant had terminated). This Court has adopted the case or controversy jurisdictional restraints imposed by Article III. *Mokal v. Derwinski*, 1 Vet.App. 12, 13 (1990).

■ Once the Court determines that the underlying appeal, here the appellant's claim for service connection for the enucleation of his left eye, is moot, his request for extraordinary relief and his motion for recusal in that separate proceeding are similarly moot. There is, as the All Writs Act states, no jurisdiction which the Court can act "in aid of." 28 U.S.C. § 1651. The First Circuit employed this logic in *Pontarelli v. Stone*, 978 F.2d 773 (1st Cir.1992). In *Pontarelli*, the parties settled their dispute while the appeal to the First Circuit was pending. The only remaining "issue" was the claim that the district judge should have recused himself. The First Circuit held that:

[B]efore an appellate court can make a ruling on the appropriateness of disqualification by a district judge, the issue must be raised as soon as the cause is known, a

factual record must be made, a ruling adverse to appellant must be made on that record, the matter must be properly appealed, *and the underlying dispute* as to which the district court ruling is relevant *must still remain a live controversy* when the issue comes for resolution by the court of appeals.

*Id.* at 775 (emphasis added). Because the underlying dispute had been completely mooted in *Pontarelli*, there was no relief available regarding the motion for recusal that could be granted—a new trial is the remedy for a violation of 28 U.S.C. § 455, the statute dealing with recusal, *id.*—and the issue of recusal was thus moot. *Id.* Similarly, in the instant case, there is no matter before this Court on which a new appellate decision could be based, and so there would be no remedy which this Court could afford to the appellant even if we were to hold that Judge Ivers should have recused himself.

■ We hold that the controversy regarding recusal was moot in October 1992, before our January 25, 1993, decision (and perforce before the Federal Circuit's decision) was rendered. Because the Federal Circuit has already vacated our opinion of January 25, 1993 (albeit on other grounds), we must, in addition, vacate Judge Ivers' August 14, 1992, order denying recusal and the July 7, 1992, order denying mandamus relief and dismiss the motion for recusal and request for mandamus. *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39, 71 S.Ct. 104, 106-07, 95 L.Ed. 36 (1950); *see also U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, —— U.S. ——, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) (where the controversy is mooted by voluntary settlement, vacatur of a judgment under review is not justified except under exceptional circumstances). With regard to any quarrel the appellant may have with the 10% rating, the appellant would have to exhaust his administrative remedies before seeking relief from this Court. *Quigley v. Derwinski*, 1 Vet.App. 1 (1989).

Recognizing that we have a mandate from the Federal Circuit issued without knowledge of the jurisdictional facts regarding mootness, and further recognizing that the Federal Circuit, being unadvised by the parties as to those facts, has had no opportunity to consider action dictated by *Munsingwear*, we proceed, in the alternative, to literal compliance with that mandate. Should the appellant appeal this decision, the Federal Circuit may wish to consider the vitality of its remand decision as precedent.

The appellant argues that Judge Ivers had arbitrarily and capriciously ignored prima facie evidence regarding the condition of the appellant's left eye while in the service and that his statement that "veterans have a special advantage over claimants for other types of gratuitous benefits" made while he was General Counsel of VA before the U.S. Senate Committee on Veterans' Affairs was evidence of partiality. On November 2, 1992, the appellant also requested that, when this Court conducted a reconsideration of the recusal issue, we include in our consideration the entire contents of his petition for a writ of mandamus which he had filed with the Federal Circuit. Pursuant to his request, we have examined the arguments the appellant put forth in that forum, as well as the voluminous appendices he attached thereto.

The statute pertaining to disqualification of judges, 28 U.S.C. § 455, provides in pertinent part:

(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

. . . .

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

. . . .

(5) He or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person:

. . . .

(iii) Is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding. . . .

(Section 455 is applicable to the Court of Veterans Appeals by operation of 38 U.S.C. § 7264(c).)

■ The appellant basically argues that Judge Ivers should have recused himself under the provisions of 28 U.S.C. § 455(a) because the fact that Judge Ivers was once VA General Counsel alone suggests that his impartiality may reasonably be questioned. Appellant's brief (Br.) for Federal Circuit at 15. The appellant also asserts that Judge Ivers has an "interest" in not recusing himself in this case because it might lead to disqualification in all cases and that that "interest" required him to recuse himself under section 455(b)(5)(iii). *Id.* We note first of all that the issues of then-General Counsel Ivers' opposition to judicial review of VA decisions as a matter of policy, his recusal in appropriate cases, and whether or not opinions issued by then-General Counsel Ivers were his own or reflections of sound legal precedent were raised and fully explored during Judge Ivers' confirmation hearings. *See Nomination of Donald L. Ivers: Hearing Before the Comm. on Veterans' Affairs, United States Senate,* 101st Cong., 2nd Sess. 21, 24, 26, 30, 32, 94–99 (1990) [hereinafter Hearings] (statements of Donald L. Ivers and letter from Senator Cranston, Chairman, to Donald Ivers and response thereto). Thereafter, his nomination was recommended unanimously for confirmation by the Senate Committee on Veterans' Affairs, and he was confirmed without opposition by the United States Senate. *See* 136 CONG.REC. S12339 (1990).

■ To determine whether section 455(a) has been violated, the vast majority of courts have adopted an objective standard. 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3549 (1984). " '[A] judge should recuse himself where a reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality.' " *Edelstein v. Wilentz,* 812 F.2d 128,

131 (3rd Cir.1987) (citation omitted). Here, under such a reasonable person standard, there is absolutely no indication that Judge Ivers' impartiality could be reasonably questioned. Courts have consistently ruled that statements regarding law by a government agent do not provide a basis for recusal where the agent subsequently serves as judge in a case involving the same matters of general policy. For example, a movant seeking to recuse a district court judge argued that the judge's prior service on the Attorney General's Commission on Pornography created the appearance of partiality under 28 U.S.C. § 455(a). *United States v. Payne,* 944 F.2d 1458, 1476 (9th Cir.1991). The Ninth Circuit found the connection between the judge's service on the Commission and the issue in the case, defendant's conviction on four counts of carnal knowledge of a female under age 16, to be too attenuated to mandate recusal. *Id.* The Court of Appeals stated:

> Courts have rejected the notion that such generalized policy views necessitate recusal as a matter of course. Courts have likewise held that expertise on and exposure to a subject ... does not necessitate recusal. *See Laird v. Tatum,* 409 U.S. 824, 835, [93 S.Ct. 7, 13–14, 34 L.Ed.2d 50] ... (1972) (mem. op. by Rehnquist, J.) ("Proof that a Justice's mind was a complete tabula rasa in the area of constitutional adjudication would be evidence of lack of qualification, not lack of bias.")

*Id.* (other citations omitted). As then-Justice Rehnquist stated in the memorandum opinion cited by the Ninth Circuit, "[I]t would be unusual if those coming from policy making divisions in the Executive Branch ... had not divulged at least some hint of their general approach to public affairs, if not as to particular issues of law." *Laird,* 409 U.S. at 835, 93 S.Ct. at 14. *See also United States v. Glick,* 946 F.2d 335, 336 (4th Cir.1991) (judge who is presently serving as Chairman of the United States Sentencing Commission need not recuse himself from an appeal of defendant's sentence).

Although the appellant in this case relies almost solely on subsection (a) of section 455, we also examine whether Judge Ivers' refus-

al to recuse himself violated subsection (b)(1) regarding a personal bias concerning a party and/or subsection (b)(3) concerning participation in the particular case while employed by the government. The strictures of subsection (b) are less broad than that found in subsection (a). *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 859 n. 8, 108 S.Ct. 2194, 2202 n. 8, 100 L.Ed.2d 855 (1988). Under subsection (b)(1), if there is a showing of personal bias or prejudice, recusal is required. *See Tafero v. Wainwright*, 796 F.2d 1314, 1322 (11th Cir.1986). However, such bias must indeed be personal. *Id.* (mere fact that the judge was once a highway patrolman did not mandate recusal or constitute a disqualification even where he had attended the funeral of the patrolman whom defendant had killed). There is no indication in the record that the statements Judge Ivers made regarding veterans' benefits being gratuities were other than an accurate statement of the official VA position at that time. Indeed, Judge Ivers told the Senate Committee at his confirmation hearings that his personal opposition was only to judicial review of BVA decisions "in the overcrowded [Article III] Federal court system," not in the new Court of Veterans Appeals. Hearings at 21; *see also* Hearings at 24, 26. He stressed that his testimony to Congress had been presented "as an advocate ... [representing] the position of the Administration." Hearings at 24. Moreover, Judge Ivers' testimony regarding veterans' benefits as "gratuities" was specifically brought to the attention of the Senate Committee by a witness during the confirmation hearing, Hearings at 66, and his nomination was thereafter unanimously approved by the Committee and confirmed by the Senate. *See* 136 CONG.REC. S12339 (1990).

With regard to the provisions of subsection (b)(3), although we find no cases in which a motion to recuse was submitted based on a judge's previous role as general counsel of a federal executive agency, courts, when presented with cases under section 455(b)(3), have held that recusal is not mandated where the judge was previously an assistant U.S. attorney unless that judge had personal knowledge of the particular case at issue. For example, merely having been at the U.S.

Attorney's office, even in a supervisory position, is insufficient ground for recusal under the statute. *See, e.g., Kendrick v. Carlson*, 995 F.2d 1440, 1444 (8th Cir.1993); *United States v. Di Pasquale*, 864 F.2d 271, 279 (3rd Cir.1988); *United States v. Gipson*, 835 F.2d 1323, 1326 (10th Cir.1988); *see also* GUIDE TO JUDICIARY POLICIES AND PROCEDURES, vol. 2, Ch. 5, 1 Compendium § 3.4–4 (1993) (under Canon 3 of the Code of Conduct for U.S. Judges, which closely mimics the wording of § 455, "A judge who formerly served as Assistant United States Attorney should recuse from all cases involving matters with which the judge came in contact during the judge's tenure, or for which the judge bore some responsibility, but need not recuse from cases in which the judge did not participate."). A district judge similarly refused to recuse himself from a habeas corpus case even though at the time the prisoner was appealing a conviction in the state of Wisconsin, the judge was attorney general of Wisconsin and the State was represented as respondent by the attorney general. *Muench v. Israel*, 524 F.Supp. 1115, 1116 (E.D.Wis.1981). As the Tenth Circuit made clear in *Gipson*, 835 F.2d at 1326, the current version of § 455(b)(3), by its language, requires actual participation on the case currently being decided. Congress' use of the word "participated" in the current version of the statute ("and in such capacity participated as counsel") implies that a higher degree of activity on the case is required than in the previous version of the statute which referred to any case on which the judge had been "of counsel." *Id.* The Tenth Circuit stated in *Gipson:*

> Thus, simple logic dictates the conclusion that in reordering the language of the statute upon which recusal is based and distinguishing between situations in which recusal is mandated, Congress has implicitly drawn a line.

> In our opinion, before the presumption arises that a judge is in fact partial because of his past conduct as an attorney, a party seeking disqualification must show that the judge actually participated as counsel. Mandatory disqualification then is restricted to those cases in which a

judge had previously taken a part, albeit small, in the investigation, preparation, or prosecution of a case.

*Id.*

The appellant does not contend that Judge Ivers participated in his case while at VA, but rather argues that the fact that Judge Ivers was once VA's General Counsel is conclusive of a partiality to VA. *See* Appellant's reply Br. for Federal Circuit at 7–8. Thus, the appellant, although he attempts to, makes no allegation that would constitute the basis for disqualification under subsection (b)(3), nor would the record support any such allegation. It is indeed curious that the appellant sought Judge Ivers' recusal when he had prevailed against VA on the issue presented—service connection.

Finally, with regard to § 455(b)(5)(iii), i.e., recusal is mandated where the judge or his relative has an interest that may be substantially affected by the outcome, the appellant merely argues that "one such substantial 'interest' concerning Judge Ivers[ ] is his knowledge that[,] based on the outcome of my recusal action, ... he might possibly be required to recuse himself from every veterans case which comes before him...." Appellant's Br. for Federal Circuit at 14–15. We find the motive that the appellant attributes to Judge Ivers to be far too attenuated and speculative to qualify as an "interest" within the meaning of § 455(b)(5)(iii). *Cf. In re Virginia Elec. & Power Co.,* 539 F.2d 357, 368 (4th Cir.1976) (Fourth Circuit adopted Professor Wright's suggestion that whether any interest other than a financial one is disqualifying may " 'depend on the interaction of two variables: the remoteness of the interest and its extent or degree.' ")

Given that there is no indication in the record that any statements made by Judge Ivers regarding VA benefits were other than mere reflections of VA's policy at that time or that Judge Ivers had contact with the appellant's claim except in his judicial capacity, there can be no reasonable basis on which his "impartiality might reasonably be questioned," and there has been no showing of a "personal bias or prejudice," or that he "participated" in or "expressed an opinion" concerning the merits of this particular case. 28 U.S.C. § 455(a), (b)(1), (3). Thus, we hold alternatively that there were no grounds under which Judge Ivers should have recused himself.

Accordingly, Judge Ivers' order denying recusal is VACATED, and the motion to recuse and the request for extraordinary relief are DISMISSED as moot. *See Munsingwear,* 340 U.S. at 39, 71 S.Ct. at 106–07.

STEINBERG, Judge, concurring:

I concur in the judgment of the Court. I do not join in the Court's opinion for two reasons. First, I do not think it this Court's proper function to make suggestions to the Federal Circuit about what issues it might wish to consider.

Second, I believe that this Court should do no more than apply, as it does, *United States v. Munsingwear, Inc.,* 340 U.S. 36, 39, 71 S.Ct. 104, 106–07, 95 L.Ed. 36 (1950), and should not speculate on the recusal issues which, we all agree, have been rendered moot. *See Pontarelli v. Stone,* 978 F.2d 773, 776 (1st Cir.1992). Having wisely decided at its very inception to adopt "the jurisdictional restrictions of the Article III case or controversy rubric", *Mokal v. Derwinski,* 1 Vet. App. 12, 15 (1990), this Court should adhere to those constraints.

I am mindful that we have a mandate from the Federal Circuit to review the single-judge decision denying recusal. However, as the majority notes also, *ante* at 156, that mandate was issued without the Federal Circuit's knowledge of the jurisdictional facts regarding mootness, and the Circuit has had no opportunity to consider action dictated by *Munsingwear, supra.* It is true that this Court's task on remand, pursuant to the law-of-the-case doctrine, is to follow the findings, holdings, and instructions contained in the appellate court's mandate. However, literal compliance with the appellate court's mandate is not required where there is "an extremely good reason to do otherwise." *Vieux Carre Property Owners, Residents and Associates, Inc. v. Brown,* 948 F.2d 1436, 1442 (5th Cir.1991) (*Vieux Carre* ). The Federal Circuit has held that the law-of-the-case doctrine does not bar a lower court from

considering the question of mootness, where, as here, the appellate court did not rule on that issue and it was raised for the first time on remand. *Exxon Corp. v. U.S.*, 931 F.2d 874, 877 (Fed.Cir.1991) (law-of-the-case doctrine applies only to issues actually determined by appellate court); *see also Vieux Carre*, 948 F.2d at 1442–43. Indeed, a court has a "duty to consider on remand whether mootness has deprived it of jurisdiction to consider the suit." *Vieux Carre*, 948 F.2d at 1443.

Under these circumstances, literal compliance with the Circuit's mandate has led the Court to issue an opinion regarding 28 U.S.C. § 455 that is "advisory in nature". *Pontarelli*, 978 F.2d at 776. I believe that such action is an unsound and unwarranted departure from our precedents and self-imposed judicial constraint.