**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 23-7775

KAREN R. SHORETTE, PETITIONER,

v.

DOUGLAS A. COLLINS,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before BARTLEY, MEREDITH, and LAURER, *Judges*.

**O R D E R**

On December 19, 2023, Karen R. Shorette, the petitioner and legal guardian of veteran Charles R. Shorette, through counsel filed a petition for extraordinary relief in the form of a writ of mandamus. After the Court convened a panel and held oral argument, the Court, on September 20, 2024, ordered the Secretary to show cause why sanctions are not warranted. And, following additional developments, on January 17, 2025, the petitioner filed a motion to withdraw the petition. For the following reasons, the Court will grant the petitioner's motion and dismiss the petition, and the Court will not impose sanctions.

**I. BACKGROUND**

This case presents a long and complicated history related to the veteran's VA disability compensation, which has been managed and distributed through VA's fiduciary program since 2008. The Court will not repeat that history here except as necessary for context; instead, the Court incorporates by reference our August 24, 2023, order, which granted in part a prior petition filed by Mrs. Shorette, *Shorette v. McDonough* (*Shorette I*), 36 Vet.App. 297, 301 (2023) (per curiam order), *appeal dismissed*, No. 24-1175, 2024 WL 939850, at *1 (Fed. Cir. Mar. 5, 2024), and our September 20, 2024, order in these proceedings, *Shorette v. McDonough* (*Shorette II*), 38 Vet.App. 10 (2024) (per curiam order).

As previously established, the petitioner has served as the veteran's legal guardian pursuant to an Indiana state court order since February 2009 and had served as his VA fiduciary from December 2008 to March 2018. *See id.* at 11. In March 2018, VA suspended payment of the veteran's benefits after a psychologist at a VA medical center alleged that the petitioner had been misusing the veteran's funds, and VA appointed a successor fiduciary for the veteran in November 2018. *Id.* Despite a prior fiduciary agreement that had allocated more than $3,000 per month from the veteran's disability benefits to pay the family's expenses and provide for his dependents, none of the veteran's benefits were allocated for his dependents and the family's expenses. *Id.* This lack of support continued even after VA determined that the petitioner had not misused the veteran's funds. *Id.*

The petitioner first requested the Court's intervention in April 2022. Initially, she asked the Court to compel VA to (1) issue a decision regarding her entitlement to be reinstated as representative payee for Mr. Shorette, (2) address her complaints that his then-current fiduciary was violating a July 2010 fiduciary agreement in which VA approved monthly expenses to support the veteran's family, and (3) release the funds that had been withheld since March 2018. *Shorette I*, 36 Vet.App. at 301 (citing Apr. 18, 2022, Petition (Pet.) at 1-3). After additional proceedings, the Court, in August 2023, granted the petition in part. As relevant here, the Court ordered the Secretary to issue a Statement of the Case responsive to the petitioner's November 29, 2018, Notice of Disagreement (NOD) regarding the appointment of a paid fiduciary and concomitant removal of the veteran's legal guardian as his fiduciary. *Id.* at 317-19. The Court dismissed the part of her petition related to unpaid familial expenses from 2018 "because the petitioner ha[d] not demonstrated that VA's failure to act [wa]s frustrating the Court's prospective jurisdiction." *Id.* at 315.[1]

Following an unsuccessful attempt to resolve the issue regarding familial expenses, *see Shorette II*, 38 Vet.App. at 12, the petitioner initiated this action in December 2023. She requested a writ compelling VA to pay her the overdue familial benefits totaling over $224,000, which VA withheld since March 2018; to restore the monthly payment of familial benefits to Mrs. Shorette; and to provide her with a copy of the veteran's VA fiduciary file. Pet. at 1-19; *see* Exhibits (Exs.) A-H. Further, notwithstanding the prior Court proceedings, Mrs. Shorette noted that VA still had not processed her November 2018 NOD. Pet. at 4; *see Shorette I*, 36 Vet.App. at 317-19.

From January through August 2024, the parties submitted numerous pleadings, memoranda of law, and *Solze* notices[2] detailing their respective arguments and the actions taken by VA surrounding the current dispute, and the Court held oral argument on August 27, 2024. *See Shorette II*, 38 Vet.App. at 11-15. As relevant here, the Secretary conceded numerous errors made by VA and the veteran's prior paid fiduciary[3] related to disbursing and managing the veteran's disability benefits, and the Secretary appeared to disavow representations that he submitted less than 3 weeks prior to oral argument. *Id.* at 14-18.

Specifically, on August 8, 2024, the Secretary responded affirmatively to the Court's question "whether Mrs. Shorette acting in her role as fiduciary would require VA's permission to reimburse herself, as the veteran's dependent, for those expenses unpaid from 2018," *Shorette v. McDonough*, U.S. Vet. App. No. 23-7775, at 2 (July 18, 2024) (unpublished per curiam order), and the Secretary submitted a declaration from a management and program analyst with the Pension and Fiduciary Service (P&F), stating that "the fiduciary must provide evidence that reimbursement is warranted before VA will authorize a reimbursement of funds," Secretary's

---

[1] The Court did "not opine on what recourse the petitioner may have at the Agency or whether she could have any recourse at the Court if the fiduciary [wa]s inappropriately withholding funds," but the Court noted that "nothing in th[e] order prevent[ed] the petitioner from attempting once more to have VA address this matter." *Shorette I*, 36 Vet.App. at 315.

[2] *See Solze v. Shinseki*, 26 Vet.App. 299, 301 (2013) (per curiam order) ("[T]he parties are under a duty to notify the Court of developments that could deprive the Court of jurisdiction or otherwise affect its decision." (citing *Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, C.J., concurring))).

[3] As discussed below, VA reinstated the petitioner as the veteran's spouse payee fiduciary during the course of these proceedings.

2

Aug. 8, 2024, Response (Resp.), Ex. 1, Declaration (Decl.) at ¶ 20. The P&F analyst indicated that Mrs. Shorette *must* provide clear evidence that she used her own funds to pay familial expenses during a period when VA had withheld all payments and that she would have to demonstrate "a cause or need for reimbursement." *Id.* However, during oral argument, the Secretary's counsel stated that it would not violate the fiduciary rules for Mrs. Shorette to reimburse herself and that she would *not need* VA's permission to reimburse herself. *See* Oral Argument (OA) at 42:03-43:33, www.uscourts.cavc.gov/oral_arguments_audio.php. Additionally, although the analyst indicated that Mrs. Shorette "must provide the [v]eteran $100.00 per month in personal spending," that she "is expected to follow the budget," and that "[f]ailure to comply . . . could result in another fiduciary replacement," counsel stated that that information was "not correct." Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶¶ 18, 20; OA at 53:03-55:05.

Considering the apparent inconsistency, on September 20, 2024, the Court ordered the Secretary "to show cause why counsel's failure to correct statements that VA knew to be false prior to the oral argument was not an abuse of the judicial process and that sanctions are not warranted."[4] *Shorette II*, 38 Vet.App. at 18. The Court also ordered (1) the Secretary to file a supplemental memorandum of law addressing why VA appears to be unwilling to make a preemptive decision that it will not initiate a misuse determination or seek to remove Mrs. Shorette as fiduciary if she reimburses herself the amount of familial expenses that was in the prior budget but unpaid, and (2) the parties to participate in another conference with a member of the Court's Central Legal Staff to discuss whether there is a mutually agreeable resolution to the matter. *Id.* at 17.

Regarding the unpaid familial expenses, the Secretary responded that VA made a preemptive decision on October 1, 2024—"VA has determined that, if you decide it is in the best interest of the [v]eteran and yourself as his dependent, a one-time lump sum reimbursement of up to $228,110.93 may be paid to yourself from VA funds under your control as his fiduciary." Secretary's Oct. 3, 2024, Resp., Ex. Additionally, VA indicated that it would not deem such action "to be a misuse of funds nor establish grounds for [the petitioner's] removal as spouse fiduciary." *Id.* The Secretary thus maintained that "the matters that are the subject of the petition have been brought to a conclusion favorable to [the p]etitioner and the petition should be dismissed." Secretary's Oct. 3, 2024, Resp. at 3.

With the Court's permission, the petitioner filed a reply in which she asserted that the October 2024 letter contains equivocal language, and she expressed her concern that VA's fiduciary service might later disagree with her "best interest" determination, decide that she misused the veteran's funds, and remove her as spouse fiduciary. Petitioner's Oct. 9, 2024, Reply at 1-4, 6-7. She also reported that VA has not responded to her September 2024 request for access to new documents added to the veteran's fiduciary file, and she asked the Court to order VA to provide her timely access. *Id.* at 4-6.

After the parties participated in a staff conference under Rule 33 of the Court's Rules of Practice and Procedure, the Secretary informed the Court that, "in an attempt to satisfy [the p]etitioner's concerns and to aid the Court by making clear the intentions and effect of the October 1, 2024, VA letter," the Secretary was planning to send the petitioner a second letter that

---

[4] The Secretary's response to this part of the Court's order will be addressed below.

provides additional clarity and assurance. Secretary's Oct. 30, 2024, Resp. at 2. As for the veteran's fiduciary file, although the Secretary's counsel indicated that he would contact the P&F to ensure a timely response to the petitioner's recent request, he maintained that that request is not properly the subject of this petition. *Id.* at 3-4.

A few weeks later, VA sent a second letter to the petitioner regarding VA's reimbursement decision. In that letter, VA explained as follows:

> We acknowledge and accept that you have determined it is in the best interest of the [v]eteran and yourself (as his spouse, dependent, and [s]pouse [f]iduciary) to reimburse yourself from the [v]eteran's VA funds a total of $228,110.93, to replace funds used for familial expenses that were incurred during the service of the prior fiduciary. Based on the unique circumstances present in this case, VA will not contest that decision.
>
> You may make this reimbursement in a single lump sum within [1] year from the date of this letter, so long as such a lump sum amount is available in the account. No documentation or further communication with VA about that lump sum payment transfer is required. This letter and the prior decision letter will serve as evidence that this transaction was reviewed in advance and will not result in either a determination of misuse of funds or removal from service as a [s]pouse [f]iduciary.

Secretary's Nov. 20, 2024, *Solze* Notice, Ex. 1 (Nov. 19, 2024, letter).

Finally, on January 17, 2025, the petitioner filed a motion to withdraw the petition, asserting that "she has reimbursed the agreed amount of familial benefits based on the Secretary's representations to her, and to this Court." Petitioner's Motion to Withdraw at 1. Further, although she reports that her access to the veteran's fiduciary file has not been resolved, she wishes to end this protracted litigation. *Id.*

## II. ANALYSIS

### A. The Petition

Pursuant to the All Writs Act (AWA), the Court has the authority to issue extraordinary writs in aid of its prospective jurisdiction. 28 U.S.C. § 1651(a). "[J]urisdiction to issue a writ of mandamus pursuant to the AWA relies upon not *actual* jurisdiction but *potential* jurisdiction." *In re Fee Agreement of Cox*, 10 Vet.App. 361, 370 (1997), *vacated on other grounds sub nom. Cox v. West*, 149 F.3d 1360 (Fed. Cir. 1998). "The remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 402 (1976). Accordingly, three conditions must be met before a court may issue a writ: (1) The petitioner must lack adequate alternative means to attain the desired relief, thus ensuring that the writ is not used as a substitute for an appeal; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and

4

(3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *See Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380-81 (2004).

This Court has adopted the case-or-controversy jurisdictional requirements imposed by Article III of the U.S. Constitution. *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994). Thus, when all relief sought by a petition for extraordinary relief has been afforded, the petition is moot. *See Chandler v. Brown*, 10 Vet.App. 175, 177 (1997) (per curiam order); *Thomas v. Brown*, 9 Vet.App. 269, 270-71 (1996) (per curiam order).

During these proceedings, VA provided the petitioner with the veteran's fiduciary file in January 2024 and updated documents in August 2024. *See* Secretary's Jan. 18, 2024, Resp. at 2, Ex. 1; Petitioner's Aug. 28, 2024, *Solze* Notice at 1; *see also* OA at 18:40-19:15. To the extent that the petitioner made an additional request for updates to the file in September 2024, the petitioner no longer wishes to pursue that matter.

As for the remaining matters, VA (1) reappointed Mrs. Shorette as the veteran's spouse payee fiduciary, *see* Secretary's Sept. 24, 2024, *Solze* Notice at 1, Ex. 1; (2) identified and confirmed the veteran's monthly expenses, including the expenses of his dependent spouse, in the amount of $4,209.11, *see* Secretary's Apr. 4, 2024, *Solze* Notice, Ex.; and (3) assured the petitioner that she may reimburse herself from the veteran's funds for the familial expenses incurred from April 2018 to March 2024 and that such action "will not result in either a determination of misuse of funds or removal from service as a [s]pouse [f]iduciary," Secretary's Nov. 20, 2024, *Solze* Notice, Ex. 1; *see* Secretary's Oct. 30, 2024, Resp., Ex. And, on January 17, 2025, the petitioner informed the Court that she has indeed reimbursed herself the agreed upon amount of familial benefits based on the Secretary's assurances. Accordingly, the Court will grant the petitioner's motion and dismiss the petition. Nevertheless, the Court is compelled to again note how troubling VA's actions have been over the past 6 years, *see Shorette I*, 36 Vet.App. at 302-04, 315-17; *Shorette II*, 38 Vet.App. at 11-16, and the Court reminds VA that its mission includes caring for the families of those who have served.

## B. Sanctions

This Court, like other federal courts, "possesses the inherent as well as the statutory authority to impose sanctions." *Pousson v. Shinseki*, 22 Vet.App. 432, 436 (2009) (per curiam order); *see* 18 U.S.C. § 401; 38 U.S.C. § 7265. Although a court considering whether to impose sanctions "'must take care to determine that the conduct at issue actually abused the judicial process,' . . . such action is not limited . . . to circumstances involving bad faith" or willfulness. *Pousson*, 22 Vet.App. at 436-37 (first quoting *Jones v. Derwinski*, 1 Vet.App. 596, 607 (1991); then citing *United States v. Saccoccia*, 342 F. Supp. 2d 25, 30 (D.R.I. 2004), *rev'd on other grounds*, 433 F.3d 19 (1st Cir. 2005); then citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980); and then citing 18 U.S.C. § 401).

Pursuant to statute, sanctions are permitted when there is "'misbehavior' before the Court 'or so near thereto as to obstruct the administration of justice,' or . . . 'misbehavior of any of its officers in their official transactions' or . . . 'disobedience or resistance to its lawful writ, process, order, rule, decree, or command.'" *Id.* at 437 (quoting 38 U.S.C. § 7265). In *Pousson*, the Court

established "three essential elements" to hold a party in civil contempt: (1) "[T]here must be an order that is 'clear and unambiguous'"; (2) "the proof of non-compliance with that order must be 'clear and convincing'"; and (3) "it must be shown that the contemnor has not 'been reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Id.* (citations omitted).

As mentioned, after oral argument, the Court ordered the Secretary "to show cause why counsel's failure to correct statements that VA knew to be false prior to the oral argument was not an abuse of the judicial process and that sanctions are not warranted." *Shorette II*, 38 Vet.App. at 18. In response, the Secretary avers that he "did not fail to correct statements that he knew to be false" or "abuse . . . the judicial process." Secretary's Oct. 21, 2024, Resp. at 1. Although he acknowledges that his responses to the Court's inquiry—whether Mrs. Shorette would require VA's permission to reimburse herself for the expenses unpaid since 2018—and the P&F analyst's August 8, 2024, declaration "could have been clearer" and may have been "inartfully worded," the Secretary maintains that he attempted to diligently comply with the Court's orders and does not consider those submissions to be false. *Id.* at 8, 12; *see id.* at 1, 6-13.

In that regard, the Secretary asserts that he consistently represented to the Court that VA does not control fiduciary funds; the fiduciary possesses the veteran's funds; and VA's duties involve appointment, oversight, and removal of fiduciaries. *Id.* at 6; *see id.* at 2 (noting that VA informed the petitioner that she "'can decide how to use the beneficiary's funds for [his] personal care and well[-]being'" (quoting Secretary's Jan. 18, 2024, Resp., Ex. 2)); *see also* Secretary's May 29, 2024, Memorandum of Law at 2, 4-6. The Secretary explains that, to the extent that he responded affirmatively to the Court's question, his response "was made in the sense that [the p]etitioner would need to obtain permission to ensure that the payment would not be later scrutinized, and removal would not be initiated." Secretary's Oct. 21, 2024, Resp. at 7. As a corollary, the Secretary asserts that counsel's statement at oral argument that the petitioner would not require VA's permission was made only in the sense that the petitioner, who is in sole possession of the veteran's funds, is empowered to make payments without advance permission. *Id.* at 7-8. The Secretary apologizes for any confusion resulting from the lack of clarity in the P&F analyst's declaration and his statements, and he assures the Court that he would not and did not fail to correct statements VA knew to be false. *Id.* at 9, 11, 12. He also stresses that counsel attempted to provide additional clarity by "proactively address[ing] this matter at oral argument." *Id.* at 7.

Similarly, regarding the P&F analyst's declaration that the petitioner "must provide the [v]eteran $100.00 per month in personal spending," that she "is expected to follow the budget," and that "[f]ailure to comply . . . could result in another fiduciary replacement," Secretary's Aug. 8, 2024, Resp., Ex. 1, Decl. at ¶¶ 18, 20, the Secretary avers that counsel only agreed that the statements are incorrect *if* you read them as a mandate, Secretary's Oct. 21, 2024, Resp. at 10 (citing OA at 53:03-55:05). However, he maintains that those statements "merely reflect[] the expectations of VA and do[] not impose a mandate." *Id.* at 9. Indeed, he explains that "[t]here could be a variety of reasons for not meeting [VA's] expectation that would be found reasonable when VA conducts oversight." *Id.* at 10.

Upon consideration of the foregoing, the Court will exercise restraint and will not impose sanctions. *See Jones*, 1 Vet.App. at 607 (explaining that the Court should exercise "restraint and discretion" when considering sanctions). In that regard, although the Secretary's August 8, 2024,

6

response and the P&F analyst's declaration could have been—indeed, should have been—clearer, the Court accepts counsel's representation, as an officer of the Court, that VA did not intentionally provide false information to the Court. Further, given counsel's explanations that VA viewed that information as nuanced and proactively attempted to clarify those nuances at oral argument, the Court concludes that it is not clear and convincing that VA failed to comply with an order of the Court. *See Pousson*, 22 Vet.App. at 437.

### III. CONCLUSION

Accordingly, it is

ORDERED that the petitioner's January 17, 2025, motion to withdraw the petition is granted. It is further

ORDERED that the December 19, 2023, petition for extraordinary relief is DISMISSED.

DATED: February 6, 2025                                          PER CURIAM.

BARTLEY, *Judge*, concurring: I agree with the majority that this petition should be dismissed per petitioner's request. And I agree, although reluctantly, that sanctions are not warranted in this matter. I write separately to emphasize that VA's actions regarding Ms. Shorette have been inconsistent with its mission to care for veterans and their families. It goes without saying that VA doesn't err when it investigates misuse-of-funds allegations, but VA went far beyond that here. It refused to reinstate a spouse-fiduciary once misuse allegations were determined to be unfounded and for many years deprived Ms. Shorette of benefit payments that it acknowledges she was entitled to receive. Based on the records before the Court, it is understandable why Ms. Shorette would conclude that VA's actions were punitive and retaliatory in nature—intent on punishing her for challenging their misuse-of-funds determination, for demonstrating that she had not misused funds, for proving that she had appealed her removal as a spouse-fiduciary and the subsequent appointment of a paid fiduciary, for proving that she was entitled to reinstatement as spouse-fiduciary, and for achieving at least some success in petitioning this Court. In conclusion, it is clear that VA's Veterans Benefits Administration Pension and Fiduciary Service requires substantially more thorough oversight to ensure, among other things, that it is not wasting government funds retaliating against the veterans and family members it is sworn to protect and assist.

7