# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 15-1280

CONLEY F. MONK, JR., ET AL., PETITIONERS,

v.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before DAVIS, *Chief Judge*, and SCHOELEN, PIETSCH, BARTLEY, GREENBERG, ALLEN, MEREDITH, TOTH, and FALVEY, *Judges.*

SCHOELEN, *Judge*, with DAVIS, *Chief Judge*, and BARTLEY, MEREDITH, TOTH, and FALVEY, *Judges*.

ALLEN, *Judge*, with GREENBERG, *Judge*, concurring in part, and dissenting in part.

PIETSCH, *Judge*, dissenting.

# O R D E R

This petition involves appeals that pre-date VA's implementation of the Veterans Appeals Improvement and Modernization Act of 2017, which went into effect on February 19, 2019. *See* Pub. L. No. 115-55, 131 Stat. 1105 (2017); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449 (Feb. 7, 2019). Claims decided before that effective date are called "legacy claims" and appeals pending under the pre-Veterans Appeals Improvement and Modernization Act system are called "legacy appeals." 38 C.F.R. § 3.2400(b) (2019). Under the legacy appeals system, a claimant can appeal an unfavorable decision to the Board of Veterans' Appeals (Board) by filing a Notice of Disagreement (NOD) and later a Substantive Appeal before the claim ultimately reaches the Board. 38 U.S.C. § 7105(a) (2018).

In this matter, petitioners[1] argue that VA's delays in deciding their appeals under the legacy system have been unreasonable and a violation of due process rights. The Court will deny Mr. Dolphin's petition for extraordinary relief in the nature of the writ of mandamus. But as to the other petitioners, because they have received the relief they sought, the Court will dismiss the other petitions as moot.

---

[1] In addition to Mr. Monk, the petitioners are James Briggs, Tom Coyne, William Dolphin, Jimmie Hudson, Samuel Merrick, Lyle Obie, Stanley Stokes, and William Jerome Wood II.

# I. INTRODUCTION

On April 6, 2015, Conley F. Monk, Jr., filed a petition with the Court on behalf of himself and similarly situated individuals for extraordinary relief in the nature of a writ of mandamus. The petition sought an order directing the Secretary to decide appeals within 1 year after a class member files a corresponding NOD. The petition alleged that the Secretary's delay in adjudicating claims for disability compensation benefits constituted an unreasonable delay and violation of the right to due process under the Fifth Amendment of the U.S. Constitution. The Court construed this petition as a motion for class action, which in a nonprecedential order it denied on May 27, 2015. *Monk v. McDonald* (*Monk I*), No. 15-1280, 2015 WL 3407451 (Vet. App. May 27, 2015). Mr. Monk appealed to the U.S. Court of Appeals for the Federal Circuit (Federal Circuit). The Federal Circuit reversed the denial and remanded the matter for further proceedings. *Monk v. Shulkin* (*Monk II*), 855 F.3d 1312 (Fed. Cir. 2017).

After the appeal returned from the Federal Circuit, this Court determined to proceed en banc given the novelty of the aggregate-action question. Subsequently, on January 23, 2018, the en banc Court granted the petitioner's motion to join James Briggs, Tom Coyne, William Dolphin, Jimmie Hudson, Samuel Merrick, Lyle Obie, Stanley Stokes, and William Jerome Wood II as additional petitioners and putative class representatives. On August 23, 2018, an equally divided Court denied the petitioners' motion for class certification. *Monk v. Wilkie* (*Monk III*), 30 Vet.App. 167 (2018) (en banc order). The matter of class certification is currently pending before the Federal Circuit. *See Monk v. Wilkie* (*Monk IV*), No. 19-1094 (Fed. Cir. petitioners'-appellants' reply brief filed Apr. 23, 2019). The en banc Court returned the matter to a panel to address the individual petitions on the merits. On March 27, 2019, the panel held oral argument to address the merits of the nine individual petitions. Subsequently, the matter was returned to the en banc Court.

# II. ISSUES

The Court must address (1) whether it has jurisdiction over the merits of the individual petitions while the class certification question is on appeal before the Federal Circuit and (2) which of the nine petitioners' petitions are now moot because of procedural development at VA.

Based on the reasons provided below, the Court determines that it retains jurisdiction over the individual petitions, but that only Mr. Dolphin's circumstances present an active case or controversy. The Court will address whether a writ is warranted based on the delays alleged in Mr. Dolphin's case. For the following reasons, the Court will deny his petition and dismiss the petitions as to the other eight petitioners.

# III. THE COURT RETAINS JURISDICTION TO ADDRESS THE INDIVIDUAL PETITIONS

Before the Court can address the individual petitions, we must determine whether we have jurisdiction to do so. This is not a discretionary inquiry. "The Court has an independent obligation to ensure that it has jurisdiction to act." *Demery v. Wilkie*, 30 Vet.App. 430, 434 (2019) (per curiam order); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (holding that all

Federal appellate courts have an independent obligation to satisfy themselves that they have jurisdiction over appeals before them).

The jurisdictional question arises because, after an equally divided Court denied the petitioners' request to certify a class, *see Monk III*, 30 Vet.App. at 169, the petitioners filed a Notice of Appeal (NOA) to the Federal Circuit challenging that decision. *See Monk IV*.[2] Recognizing that, in some circumstances, filing an appeal in a reviewing court may affect the jurisdiction of the court from which an appeal has been taken, *see, e.g.*, *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), after oral argument, the panel ordered the parties to file supplemental briefs on the jurisdictional question. The petitioners argued that filing the appeal concerning class certification did not affect this Court's jurisdiction to address the individual petitions. In contrast, the Secretary asserted that the Court lacks jurisdiction while the class certification appeal is pending.

There is no precedent directly on point with respect to this jurisdictional question. It was only 2 years ago that the Federal Circuit held that this Court had the authority to entertain class actions. *See Monk II*, 855 F.3d at 1322. And in those 2 years, neither this Court nor the Federal Circuit has had occasion to consider what filing an appeal at the Federal Circuit of this Court's class action determination means for our continued jurisdiction over the merits of a petition (or appeal).

The Court begins with widely accepted practice in Federal appellate courts. The Supreme Court has held that "[t]he filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." *Griggs*, 459 U.S. at 58 (emphasis added); *see also Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 378-79 (1985) (recognizing that a lower court retains jurisdiction in situations in which it will "not interfere with" the issues on appeal). The Supreme Court's statement reflects the principle that a case should not be in two places at once with respect to the same issue.

Applying this principle, the United States Court of Appeals for the Second Circuit has explained that "the filing of a notice of appeal only divests the district court of jurisdiction respecting the questions raised and decided in the order that is on appeal." *N.Y. State Nat'l Org. of Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989). Other courts of appeals agree. *See In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d 372, 375 (8th Cir. 1996) (describing situations in which a district court retains jurisdiction when an appeal is pending in a court of appeals); *Alberti v. Klevenhagen*, 46 F.3d 1347, 1359 (5th Cir. 1995) (same); *Ced's Inc. v. U.S. Envtl. Prot. Agency*, 745 F.2d 1092, 1095 (7th Cir. 1984) (same).

This Court has considered the general question of what filing an NOA at the Federal Circuit means for continued proceedings here. In *Sumner v. Principi*, the Court stated that "[t]he

---

[2] We note that the petitioners filed their NOA as if they had a right to such an appeal. A right to an appeal is available under 38 U.S.C. § 7292(a) for "a decision" of the Court. In contrast, for "an order not otherwise appealable" under section 7292(a), a party may, under certain circumstances, seek certification from this Court allowing the party to petition the Federal Circuit to hear an immediate appeal. *See* 38 U.S.C. § 7292(b)(1). The petitioners did not seek certification under subsection (b)(1). Accordingly, the Court proceeds under the assumption that the appeal is properly the subject of section 7292(a) as the petitioners have maintained.

3

appellant's filing of an NOA to the Federal Circuit divests this Court of all jurisdiction over this case." 15 Vet.App. 404, 405 (2002) (en banc order). The Secretary argues that this sentence supports his argument that this Court lacks jurisdiction over the merits of the petitions. But a literal reading of this statement would strip the statement of its context and take this Court out of the mainstream of Federal appellate court practice, including Federal appellate court practice as the Supreme Court of the United States recognizes it. In other words, *Sumner*'s statement read too broadly would neglect the important qualification that concurrent jurisdiction is inappropriate for "those aspects of the case involved in the appeal." *Griggs*, 459 U.S. at 58.

And this reading of *Sumner* also makes sense based on *Sumner*'s facts. In *Sumner*, the Court had denied the appellant's motion for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). 15 Vet.App. at 404. The appellant moved for reconsideration of the Court's decision on attorney fees. *Id*. However, before the Court could act on the motion, the appellant filed an NOA to the Federal Circuit as to the attorney-fee issue – the same issue the Court considered in the motion for reconsideration. *Id*. at 405. It was in that context that the en banc Court made its statement about being divested of jurisdiction. We assume that our Court's statement in *Sumner* was meant to align practice here with that of other Federal appellate courts. And, in context, *Sumner* comports with general Federal appellate court practice.[3]

Applying the law to the case before us, we conclude that the Court retains jurisdiction to address the merits of the individual petitions. The issues the petitioners appealed to the Federal Circuit in *Monk IV* are whether (1) this Court applied the correct legal standard in determining whether the proposed class members presented a common question for adjudication under Federal Rule of Civil Procedure 23(a)(2); (2) the Court erred in not certifying the proposed class; and (3) the Court misapprehended the requirements of Federal Rule of Civil Procedure 23(b)(2). *See* Opening Brief of Petitioners-Appellants in *Monk IV* at 3.

These three questions are distinct from the issues presented in the individual petitions, namely whether VA's delay in adjudicating the individual claims was unreasonable or unconstitutional, or both. Our resolution of that question for each petitioner will in no way interfere with the Federal Circuit's legal determination concerning commonality or any other issue before that court in addressing class action certification. And the Supreme Court's jurisprudence bolsters our conclusion that class action issues stand apart from unreasonable-delay issues because the Supreme Court has instructed that "[m]erits questions may be considered to the extent–but only to the extent–that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). In other words, any consideration at the Federal Circuit of the merits questions that are

---

[3] The Court's decision is also consistent with cases based on the principle announced in *Cerullo v. Derwinski*, that once this Court exercises jurisdiction over a matter, the Board may not consider the same issue. 1 Vet.App. 195, 197 (1991) (holding that, "[o]nce an appellate body takes jurisdiction over a claim, the lower tribunal may not consider the *same issues*" (emphasis added)); *see also Young v. Shinseki*, 25 Vet.App. 201, 204-05 (2012) (en banc order) (holding that "[t]he Court's review of the propriety of the [Board's] referral action is separate and apart from the [regional office's (RO's)] adjudication of the merits of the referred matter and therefore does not contravene *Cerullo*").

4

before us is quite limited. Accordingly, the Court concludes that the issues before us are not part of the "aspects of the case involved in the appeal" at the Federal Circuit.[4] *Griggs*, 459 U.S. at 58.

The Court also observes that the Federal Circuit apparently proceeded on the assumption that an NOA concerning class certification does not divest this Court of jurisdiction over individual merits questions. In *Monk I*, a single Judge of this Court denied class certification. 2015 WL 3407451, at *4. The petitioner then filed an NOA to the Federal Circuit as to that class certification question. While that appeal was pending, the single Judge denied the individual petition on the merits. *Monk v. McDonald*, No. 15-1280, 2015 WL 4139012 (Vet. App. Jul. 8, 2015) (order). The petitioner appealed that decision as well. In *Monk II*, the Federal Circuit consolidated the appeals and stated: "On May 27, 2015, and July 10, 2015, Mr. Monk filed two timely appeals before the court, one challenging the Veterans Court decision to deny his individual disability claim and the other to appeal the Veterans Court's decision denying his request for a class action." 855 F.3d at 1315. While we do not assert that in *Monk II* the Federal Circuit focused on the jurisdictional question we confront today, its statement does not call into question the propriety of our continued adjudication of the merits after the NOA as to class certification had been filed. Indeed, the Federal Circuit noted that both appeals were "timely" and, apparently, properly before that court. *Id.*

The Court adds one final point to support our jurisdictional conclusion. If the Court were to hold that it did not continue to have jurisdiction over the individual petitions because the class certification appeal remains pending, the Court would treat class certification decisions in this Court differently than those adjudicated in the district courts. For all those decisions, the Federal Rules of Civil Procedure provide that an appeal of an issue of class action certification or class modification "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." FED. R. CIV. P. 23(f). Though we recognize that these rules do not apply to this Court, a significant incongruity would result if we declined to proceed here because we lacked the *power* to do so. *See* FED. R. CIV. P. 1. Thus, in aligning its practices with those of the rest of

---

[4] Judge Pietsch's dissent relies on *Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017), for the contention that the Supreme Court has made clear that a district court order denying class certification is an interlocutory decision and not a final decision, which entitles a party to an appeal as of right. *Post* at 25. However, whether an appellate court has jurisdiction over such an interlocutory decision implicates the jurisdiction of the appellate court, which was the issue in *Microsoft*. Here, the issue before the Court concerns our jurisdiction over the underlying merits of the individual petitions. The Supreme Court in *Griggs* made clear that a lower court continues to have jurisdiction over the underlying merits of a case that is unrelated to the aspects of the appeal before an appellate Court. *See Griggs*, 459 U.S. at 58; *Marrese*, 470 U.S. at 378-79.

Judge Pietsch also contends that the Court should have "immediately returned" to the petitioners their NOA to the Federal Circuit of our August 2018 order denying class certification. *Post* at 26. However, Judge Pietsch's dissent cites no authority that would have authorized this Court to have taken such an action. Our Court receives the NOA to the Federal Circuit, but it is for the Federal Circuit to determine whether it has jurisdiction over the underlying appeal. 38 U.S.C. § 7292(a); *see Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed. Cir. 1996) ("[A] statutory tribunal must ensure that it has jurisdiction over each case before adjudicating the merits, . . . [and] a potential jurisdictional defect may be raised by the court or tribunal, sua sponte . . . and, once apparent, must be adjudicated." (emphasis omitted)).

the Federal system, the Court would not only take a legally proper course of action, but it would also take the most sensible approach.[5]

After careful consideration, the Court concludes that the pendency of an appeal concerning class certification has not divested us of jurisdiction to adjudicate the merits of the individual petitions. It is noteworthy that neither party has asked us (or the Federal Circuit) to stay proceedings in this appeal. So, we turn to the individual petitions.

## IV. MOOT PETITIONS

In this matter, there are nine petitioners before the Court. The Court will address below Mr. Dolphin's petition on the merits. *See* Part V, *infra*. As to the eight remaining petitioners, the Court finds that they fall into one of three categories: (1) Those who have filed a motion to dismiss their individual petitions as moot; (2) those who concede their petitions are moot but ask to remain as potential class representatives should the Federal Circuit reverse this Court's decision not to certify the proposed class; and (3) those who claim the circumstances of their cases fall under an exception to mootness. We will discuss each of these categories in turn.

### A. Petitioners Who Have Filed a Motion To Dismiss Their Petitions as Moot

On November 23, 2018, James Briggs and William Jerome Wood II jointly filed a motion to dismiss, asserting that because the Secretary had provided the relief they sought, their individual petitions are moot. They further noted that they no longer wished to serve as class representatives.

This Court has adopted the case-or-controversy jurisdictional requirements under Article III of the U.S. Constitution. *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994). Where VA has provided all relief sought by a petition for extraordinary relief, the petition is moot. *See, e.g., Thomas v. Brown*, 9 Vet.App. 269, 270 (1996) (per curiam order); *Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990). Based on the foregoing, the Court will grant Mr. Briggs's and Mr. Wood's motion to dismiss their petitions.

### B. Petitioners with Moot Petitions Who Wish To Remain Class Representatives

In an October 2018 response to a Court order, Mr. Coyne, Mr. Merrick, and Mr. Stokes conceded that their petitions were moot: Mr. Coyne, Mr. Merrick, and Mr. Stokes have each received all the relief sought in their petitions for extraordinary relief. *See* Petitioners' October 2018 Response (Pet. Oct. 2018 Resp.) at 1; *Aronson*, 7 Vet.App. at 155; *see also Thomas*, 9 Vet.App. at 270; *Mokal*, 1 Vet.App. at 15. However, they asserted that they "reserve their right to serve as class representatives" in the class action matter pending at the Federal Circuit and "request[ed] that their individual claims not be dismissed." Pet. Oct. 2018 Resp. at 2.

---

[5] We are not suggesting that the *Federal Circuit* should use Rule 23 to support its jurisdiction in the appeal before it. Like our Court, the Federal Circuit has its own independent obligation to ensure it has jurisdiction. *See Steel Co.*, 523 U.S. at 94-95. It is for the Federal Circuit to determine whether it has jurisdiction over the appeal of the class certification decision in *Monk IV*.

At oral argument, the petitioners' counsel conceded that the issue whether these petitioners were valid class representatives was before the Federal Circuit and could be decided by that court while this Court addresses the merits of the petitions. *See* Oral Argument (O.A.) at 1:21:18-22:20 (oral argument held Mar. 27, 2019). Given the jurisdictional questions raised in this matter as discussed above, the Court agrees that the issue of who can be a class representative is currently before the Federal Circuit, and this Court may not weigh in on this issue. Thus, the Court will dismiss Mr. Coyne's, Mr. Merrick's, and Mr. Stokes's petitions.

## C. Petitioners Who Claim Mootness Exceptions

Finally, Mr. Monk and Mr. Hudson argue that, although their petitions are moot because they received Board decisions, they are still entitled to a writ under an exception to mootness. Specifically, these petitioners argue that their claims will be subject to delay in the future, as they continue to move through the VA appeals process, and the petitioners point out the practice of "strategic mooting" by the Secretary when petitions alleging delay are brought before the Court. *See* Petitioners' January 2019 Supplemental Brief (Pet. Jan. 2019 Supp. Br.) at 34-36.

At oral argument, petitioners' counsel also argued that Ms. Obie's petition should be considered under an exception to the mootness doctrine. O.A. at 8:11-40. By way of background, Ms. Obie informed the Court on March 7, 2019, that VA had granted dependency benefits for her daughter on November 16, 2018. Her daughter's dependency benefits formed the basis of Ms. Obie's petition before the Court. Thus, she received the relief she sought before the Court. However, she argues that though the grant of benefits is no longer at issue, she originally asked for an effective date earlier than that VA had assigned, and her original NOD has not been fully resolved. *See* Petitioner's March 2019 *Solze* Notice (Pet. Mar. 2019 *Solze* Notice) at 2-3; *see also* O.A. at 1:15:44-17:43.

The effective-date issue lies downstream from the initial grant of benefits, and the initial NOD that appealed the denial of benefits cannot initiate appellate review of the downstream element. *See Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997). Thus, Ms. Obie's petition is also moot.

We turn to the exceptions to mootness these petitioners advance. The capable-of-repetition-but-evading-review exception to mootness applies where "'(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). With respect to the first prong, the issues underlying petitions asserting delay generally will not be resolved by VA before the Court has an opportunity to reach a decision on the merits of the petitions. Here, it was only after the Court resolved the class action issue (which is on appeal to the Federal Circuit) and was well into considering the merits of the individual petitions that VA resolved the petitions by issuing Board decisions on Mr. Monk's and Mr. Hudson's claims and a rating decision on Ms. Obie's claim. Certainly, for these petitioners, the delay in their cases was not too short to be fully litigated. The action they sought to compel has been taken, so the delay for them no longer exists because they have gotten precisely what they sought. In other words, the concept of a wrong being too short to rush to court does not fit

7

comfortably with delay-based claims (at least, outside the class action context, as noted below, *see supra* note 4). The Court does not need to decide whether this would be true for all delay-based claims. However, it is true on the facts before us.

As to the second prong, these petitioners assert that future claims within VA's appeals process will result in delay. We find these assertions speculative. Furthermore, these petitioners can file petitions with the Court if any such future delay occurs and this matter has not been certified as a class action. *Cf. Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995). Thus, the mootness exception for claims that are capable of repetition yet evade review does not apply here.

As to the voluntary-action-by-the-defendant exception to mootness, these petitioners apparently make two related points. First, because the Secretary often acts to address claims asserted in a petition, thereby avoiding Court review of the legality of its practices, the Court should deem their petitions not moot. The Supreme Court established that "[t]o deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration." *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980). However, this exception is designed to prevent individual class representatives from being "picked off" and thus preventing a group of similarly situated persons from proceeding as a class. *Id.* That rationale does not apply to the merits here because the Court denied class certification.[6] That could change should the Federal Circuit reverse this Court's decision, but for now there is no class with which to be concerned. Furthermore, Mr. Monk, Mr. Hudson, and Ms. Obie have not shown that VA acted in bad faith in deciding their claims while their petitions were pending. As to Mr. Monk and Mr. Hudson, the Board is required to consider cases in docket number order, 38 U.S.C. § 7107, and, here, the petitioners' docket numbers were reached.

The petitioners also frame the Secretary's granting the relief sought as within the voluntary-cessation exception to mootness, which applies where a wrongdoer voluntarily ceases the unlawful conduct at issue. The notion here is that a court should not be deprived of jurisdiction when a wrongdoer is caught with his proverbial hand in the cookie jar, saying: "Don't worry, I've stopped and won't do it again." *See generally United States v. W.T. Grant Co.*, 345 U.S. 629 (1953). This notion is true as a general matter, but it doesn't fit the situation before the Court. Here, the wrongdoing these petitioners allege was VA's failure to timely adjudicate their claims. And VA has now provided exactly what these petitioners sought – VA has adjudicated their claims, which were on appeal. In other words, VA is not like a defendant in a civil case who has stopped bad behavior and asks a court to trust it going forward. Any additional wrongful conduct by the Secretary would be materially different from what has allegedly transpired in the past. These petitioners essentially have tried to fit a round peg into a square hole. The voluntary-cessation exception to mootness simply does not apply.

---

[6] The Court recently applied a separate exception to mootness in certifying its first class in *Godsey v. Wilkie*, 31 Vet.App. 207, 218-20 (2019) (per curiam order). Although both this case and *Godsey* involved allegations of delay, where the Secretary's actions mooted the claims, *Godsey* occurred in the context of a class, where in this matter, the Court has denied class certification, as discussed above. That is a significant distinction because the "inherently transitory" exception *Godsey* applied is specifically focused on class actions. *See id.*; *see also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991); *Pitts v. Terrible Herbst, Inc*., 653 F.3d 1081, 1090 (9th Cir. 2011). Thus, the "inherently transitory" exception has no application here.

Finally, on a practical note, it is not at all clear what the Court would order the Secretary to do under these petitioners' theory that their claims are not moot. As we have explained, they have each obtained everything they sought from the Secretary in their petitions to the Court. It is difficult to conceive of the orders the Court would direct to the Secretary because there is nothing more for the Secretary to do.

In sum, because no exceptions to mootness apply to Mr. Monk's, Mr. Hudson's, and Ms. Obie's petitions, they are also moot because each of these petitioners has received the relief they sought. *See Aronson*, 7 Vet.App. at 155; *see also Thomas*, 9 Vet.App. at 270; *Mokal*, 1 Vet.App. at 15. Furthermore, this Court may not address whether these petitioners may remain class representatives, as, as explained above, that matter is pending at the Federal Circuit. Thus, the Court will dismiss Mr. Monk's, Mr. Hudson's, and Ms. Obie's petitions.

Having addressed the mooted petitions, the Court now turns to Mr. Dolphin's petition, the only one presenting a live case or controversy.

## V. MR. DOLPHIN

### A. Background

Mr. Dolphin's case has a very complex procedural history encompassing many claims for service connection, special monthly compensation (SMC), and dependents' educational assistance (DEA), as well as disputes as to disability ratings and effective dates for many of the benefits awarded. For purposes of Mr. Dolphin's petition, his claims began on February 26, 2014, when he filed a formal claim for disability compensation benefits for 10 disabilities. Pet. Jan. 2019 Supp. Br., Exhibit (Ex.) O. In August 2014, the VA RO granted service connection for six disabilities: (1) PTSD, (2) left shoulder disability, (3) sciatica of the left lower leg, (4) tinnitus, (5) lower back disability, and (6) residuals of a traumatic brain injury (TBI).[7] *Id*. The combined disability rating for these disabilities was 90%, effective February 26, 2014. *Id*. Additionally, the RO denied service connection for the remaining four disabilities: (1) Hearing loss, (2) epilepsy, (3) right hand injury, and (4) right knee injury. *Id*. The following month, the RO denied a total disability rating based on individual unemployability (TDIU). Secretary's March 2019 Supplemental Brief (Secretary's Mar. 2019 Supp. Br.), Ex. A.

On November 3, 2014, Mr. Dolphin filed an NOD disputing the RO's decision on the disability ratings, TDIU, and effective dates for the six service-connected disabilities; and the denial of service connection for four disabilities. Pet. Jan. 2019 Supp. Br., Ex. P. In January 2015, Mr. Dolphin notified the RO that he wished to have a de novo review of his appeal by an RO decision review officer (DRO). Secretary's Mar. 2019 Supp. Br., Declaration of Sarah Classy. On March 25, 2015, Mr. Dolphin testified before the DRO.

While the DRO was acting on Mr. Dolphin's appeal of the 17 issues that are the subject of this petition, the DRO was also processing other claims that led to an increase in Mr. Dolphin's

---

[7] The assigned disability ratings follow: (1) 70% (PTSD); (2) 20% (left shoulder); (3) 20% (sciatica left leg); (4) 10% (tinnitus); (5) 10% (low back disorder); and (6) 10% (TBI).

monthly compensation. For example, in June 2015, the RO granted Mr. Dolphin service connection for leukemia and rated this disability as 100% disabling, effective February 18, 2015. *See* Secretary's Mar. 2019 Supp. Br., Ex. E and Declaration of Sarah Classy. Because of the June 2015 RO decision, the combined schedular disability rating for Mr. Dolphin's disabilities and the rate of disability compensation for which he was paid for almost the entirety of his appeal, increased from 90% to 100%. *Id.* Additionally, Mr. Dolphin was awarded DEA and increased compensation in the form of SMC for being housebound. *Id.* [8]

On January 22, 2018, the DRO granted two of the previously denied service-connection claims (epilepsy and hearing loss) and granted TDIU. *See* Secretary's Mar. 2019 Supp. Br., Ex. E. Additionally, the DRO increased the disability ratings for the left shoulder from 20% to 30% and for the lower back from 10% to 20%.[9] *Id.* The DRO assigned a staged rating for the sciatica of the left leg resulting in a decreased rating from 20% to 10%, effective April 1, 2016. Pet. Mar. 2019 *Solze* Notice, Ex. G; Secretary's Mar. 2019 Supp. Br., Ex. E. Finally, the DRO granted an earlier effective date of December 2013 for PTSD, left shoulder disability, sciatica of the left lower extremity, tinnitus, low back disability, and TBI. *Id.* On this same date, the RO issued a Statement of the Case (SOC). Pet. Mar. 2019 *Solze* Notice, Ex. F.

On March 2, 2018, the Board received Mr. Dolphin's Substantive Appeal, which narrowed the appeal to the propriety of the effective date for the award of all 10 service-connected conditions and TDIU. Pet. Mar. 2019 *Solze* Notice, Ex. E. Mr. Dolphin's Substantive Appeal also included a request for a Board videoconference hearing.[10] *Id.*

On February 7, 2019, the RO notified Mr. Dolphin that his appeal had been certified to the Board. *Id.*, Ex. I. In August 2019, the Board notified Mr. Dolphin that his appeal had been placed on the Board's docket. Pet. Sept. 2019 *Solze* Notice.

## B. Application of *TRAC* Factors

This Court has authority to issue extraordinary writs in aid of its jurisdiction pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See Cox v. West*, 149 F.3d 1360, 1363-64 (Fed. Cir. 1998); *Kelley v. Shinseki*, 26 Vet.App. 183, 185 (2013) (per curiam order). These writs include writs of mandamus to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2); *see Martin v. O'Rourke*, 891 F.3d 1338, 1343 (Fed. Cir. 2018). However, "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 402 (1976). Three conditions must be met before the Court can issue a writ: (1) The petitioner must demonstrate the lack of adequate alternative means to obtain the desired relief, thus ensuring that the writ is not used as a substitute

---

[8] During the appeal period, the RO also granted Mr. Dolphin service connection for two other conditions that are not part of this petition: Coronary artery disease (initially rated 10% disabling and then increased to 30%) and diabetes (rated 20% disabling). *Id.*

[9] An earlier effective date of December 2, 2013, was also granted for entitlement to DEA.

[10] On October 1, 2019, Mr. Dolphin withdrew his request for a Board hearing. Pet.'s Response to Court's Sept. 2019 Order.

for the appeals process; (2) the petitioner must demonstrate a clear and indisputable right to the writ; and (3) the Court must be convinced, given the circumstances, that issuance of the writ is warranted. *See Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380-81 (2004); *Kelley*, 26 Vet.App. at 186.

"[T]he overarching inquiry in analyzing a claim of unreasonable delay is 'whether the agency's delay is so egregious as to warrant mandamus.'" *Martin*, 891 F.3d at 1344 (Fed. Cir. 2018) (quoting *Telecomms. Research & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 79 (D.C. Cir. 1984)). In *Martin*, the Federal Circuit held that the factors outlined in *TRAC* provide an appropriate framework for analyzing claims of unreasonable delay. *Id.* at 1348. *TRAC* identified six factors that the Court should weigh to determine whether VA's delay is so egregious to warrant mandamus:

> (1) [T]he time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

750 F.2d at 80 (citations omitted). These are factors that must be balanced in an individual case. They are not elements to be checked off a list. The Court now turns to each factor as it applies specifically to Mr. Dolphin's petition.

### *1. Rule of Reason*

Mr. Dolphin urges the Court to hold that it was conclusively unreasonable and a violation of his due process rights to wait more than 12 months after he filed his November 2014 NOD for the Board to issue a decision on his appeal. Pet. Jan. 2019 Supp. Br. at 15-16. Alternatively, he argues that the "years-long" delay he experienced "far surpasses any cogent 'rule of reason.'" *Id.* at 16.

Although Mr. Dolphin argues that "the first *TRAC* factor is focused on the length of delay in its entirety, not VA's level of activity" within this period, *id.* at 21, the Federal Circuit resoundingly rejected this approach in *Martin* when it made clear that it was unwilling to create a "hard and fast rule with respect to the point in time at which delay [in the adjudication of VA claims] becomes unreasonable." *Martin*, 891 F.3d at 1346. Rather, *Martin* states that the "rule of reason" requires this Court to "look at the particular agency action for which unreasonable delay is alleged" and evaluate the reasonableness of the delay given the specific factual circumstance before the Court. [11] *Id.* at 1345; *see TRAC*, 750 F.2d at 79.

---

[11] Mr. Dolphin's argument that a wait of more than 12 months is presumptively unreasonable is not only out of step with *Martin*, but it also raises the question how the 1-year presumption of unreasonableness would work given

*Martin* instructs the Court to consider various factors that may assist in evaluating the reasonableness or unreasonableness of VA's actions. For example, *Martin* recognizes that "[i]t is reasonable that more complex and substantive agency actions take longer than purely ministerial ones." 891 F.2d at 1345-46. *Martin* also directs this Court to consider whether the delay is based on "complete inaction" by VA or whether the delay is attributable, "in part, to the VA's statutory duty to assist a claimant in developing his or her case." *Id*. at 1346.

Because Mr. Dolphin's NOD challenged the propriety of the disability ratings for 6 service-connected disabilities (including TDIU), and their assigned effective dates, as well as the denial of service connection for 4 other disabilities, his claim involving 10 disabilities mushroomed into an appeal of 17 distinct issues. The sheer number of issues contested by Mr. Dolphin's NOD attests to his appeal's complexity.

Additionally, a careful examination of the facts shows that much of the Secretary's delay in adjudicating Mr. Dolphin's appeal resulted from the Secretary's fulfilling substantive Agency actions to comply with statutory duties. For example, Mr. Dolphin's testimony at an RO hearing produced a 60-page transcript. *See* Secretary's Mar. 2019 Supp. Br., Ex. D. At the hearing, Mr. Dolphin submitted a brief to set forth his arguments and "more than 1600 pages" of military and medical records to support his claims. *Id*.

In 2016, the DRO further complied with his statutory duties by also assisting Mr. Dolphin in obtaining 10 additional medical examinations to evaluate his PTSD, TBI, seizures, headaches, peripheral nerves, lower back, shoulder, hearing loss, heart disease, and diabetes. *See* Secretary's Mar. 2019 Supp. Br., Ex. E. These examination reports were added to Mr. Dolphin's voluminous claims file, which already included many other medical records pertaining to the issues on appeal.[12] Additionally, the DRO obtained other evidence including service records, VA treatment records, employment records, and Social Security Administration records. *Id*.

While the DRO was adjudicating the issues on appeal, the RO also processed other claims that led to a significant increase in Mr. Dolphin's monthly disability compensation. In June 2015, the RO granted Mr. Dolphin service connection for leukemia and rated this disability as 100% disabling, effective February 18, 2015. Mr. Dolphin was also awarded SMC and DEA. Secretary's Mar. 2019 Supp. Br., Ex. E and Declaration of Sarah Classy.

---

that the deadline for filing a Substantive Appeal in a legacy appeal is the later of either the 60 days after the date the SOC is mailed, or the remainder of the 1-year period for filing an NOD with the RO decision being appealed. 38 C.F.R. § 20.302(b)(1) (2018); *see also* 38 U.S.C. §§ 7105(a), (d)(3) (2018). Under the statutory and regulatory framework governing VA appeals, to file an NOD a claimant has a year following the date the RO decision was mailed.

To illustrate the fallacy in Mr. Dolphin's argument, consider the following scenario: A veteran receives an adverse RO decision on December 1, 2009, and promptly files his NOD on December 2, 2009; the RO issues an SOC on January 1, 2010; the veteran waits until the last day before his appeal period expires (November 30, 2010) to file his Substantive Appeal, and he requests a Board hearing. Under the petitioner's argument, if the Board did not hold a hearing and issue its decision within 1 day, the Board's 1-day delay would be conclusively unreasonable.

[12] *See* Secretary's Mar. 2019 Supp. Br., Ex. E (showing two pages of documents, including many medical records and other evidence, that were part of Mr. Dolphin's claims before the 2016 examination reports were added).

After developing the voluminous record in Mr. Dolphin's appeal and acting on Mr. Dolphin's other claims, in January 2018, the DRO issued a 21-page decision simultaneously with a 69-page SOC. Secretary's Mar. 2019 Supp. Br., Ex. E; Pet. Mar. 2019 *Solze* Notice, Ex. F. The DRO decision contains a 6-page list of evidence that the DRO reviewed and considered in making his decision on the 17 issues in Mr. Dolphin's appeal. *Id*. The DRO granted service connection for hearing loss and epilepsy (two of the four disabilities that were initially denied), increased the disability rating for two of Mr. Dolphin's disabilities (left shoulder, and sciatica of the left leg),[13] and assigned an earlier effective date (December 2013) for all his service-connected disabilities. *Id*. The DRO also granted Mr. Dolphin's request for TDIU. *Id*.

In March 2018, Mr. Dolphin perfected his appeal and narrowed the number of issues on appeal. Pet. Mar. 2019 *Solze* Notice, Ex. E. He decided not to pursue his appeal of the denial of service connection for the remaining two disabilities and the propriety of the disability ratings for his six service-connected disabilities. *Id*. Indeed, the only issues that remain on appeal are the proper effective dates for his schedular disability ratings and TDIU. *Id*. In February 2019, the RO certified his appeal to the Board. Pet. Mar. 2019 *Solze* Notice, Ex. I.

Contrary to Mr. Dolphin's assertion that the delay of his appeal was occasioned by VA inefficiency and inaction, an examination of the facts reveals that the RO took a series of actions required by the statutory scheme governing VA benefits. Notably, a significant portion of the delay between Mr. Dolphin's 2014 NOD and the January 2018 DRO decision and SOC is attributable to VA's actions in complying with its legal duties. The exception to this is the 10 months it took for the RO to certify the appeal to the Board. The Secretary has not offered any explanation for the delay in executing this act, which, at least in part, appears to be ministerial. But, on balance, the Secretary's actions have been reasonable, and the rule of reason favors the Secretary.

*TRAC*'s unreasonable-delay analysis requires weighing the length of time that has elapsed since the Agency came under a duty to act and the "rule of reason." It is telling that Judge Allen in his dissent (in which Judge Greenberg joins) does not find unreasonable the delay between Mr. Dolphin's 2014 NOD and the February 2019 appeal certification. Indeed, despite his assertions to having looked at the "longitudinal history of [Mr. Dolphin's] claims over the four years," Judge Allen makes no attempt to delve into the reasons for the length of time it took the RO to develop the claims, conduct a hearing, review the voluminous record, analyze the issues, and decide the merits of the 17 issues involved in Mr. Dolphin's appeal. *See* discussion *supra* at 11.

At this point, Mr. Dolphin has been waiting 8 months since his appeal was certified for the Board to issue a decision. In *Godsey*, the Court determined that VA had unreasonably delayed the appeals of a class of claimants who had been waiting at least 18 months for VA to initiate a pre-certification review of their cases. 31 Vet.App. at 228. The Court found the 18-month delay unreasonable, particularly because the pre-certification required no development. *Id*. The Court finds that here, the 8 months that Mr. Dolphin has been waiting for a Board decision is not too

---

[13] The DRO increased the disability rating for Mr. Dolphin's left shoulder from 20% to 30% and increased the disability rating for the lower back disability from 10% to 20%. Additionally, the DRO assigned a staged rating for Mr. Dolphin's left leg sciatica.

long, given that this period is much shorter than the 18-month period in *Godsey* and the VA actions Mr. Dolphin is awaiting involve more complexity than pre-certifying an appeal.[14]

After reviewing and analyzing the *entire* period that Mr. Dolphin's claims have been on appeal, the Court concludes that, under the rule of reason, VA's delay in adjudicating the claim, while regretful, is not unreasonable. *See Martin*, 891 F.3d at 1345-46; *Godsey*, 31 Vet.App. at 228. Unlike *Godsey*, where the delay in pre-certifying appeals to the Board "consists of nothing but waiting in line: no development, no adjudication, no action whatsoever on the part of VA," *Godsey*, 31 Vet.App. at 228, Mr. Dolphin's appeal involves delay attributable to the time it took for VA to execute its statutory duties to develop and decide Mr. Dolphin's complex appeal.[15]

### 2. Congressional Timetables

*Martin* recognized that the second factor is often related to the first factor because a congressional "'timetable or other indication of the speed with which [Congress] expects the agency to proceed' may 'supply content' for the rule of reason." 891 F.3d at 1345 (quoting *TRAC*, 750 F.2d at 80). The Court agrees with Mr. Dolphin that Congress undoubtedly has an interest in the prompt adjudication of appeals for VA benefits. However, it is also clear that, despite this concern, Congress chose to design an adjudicatory system without providing deadlines for VA determinations or any other secretarial action. *See id.* at 1345-46. In fact, rather than establishing timelines, Congress created a system with multiple steps for adjudication, including assisting claimants in developing their cases. *See id*. Indeed, with the recent enactment of the Veterans Appeals Improvement and Modernization Act, Congress again chose not to impose any deadlines on VA's adjudication of claims. The Secretary notes that the legislative history of the new law shows that the purpose of the Act was to "'expedite VA's appeals process while protecting veterans' due process rights.'" Secretary's Mar. 2019 Supp. Br. at 29 (quoting H. Rep. No. 115-135, at 2 (2017)).

Most recently in *Godsey*, the Court determined that, because of the lack of congressional deadlines surrounding certification of appeals, the second *TRAC* factor favored the Secretary. 31 Vet.App. at 229. Thus, the lack of congressional deadlines supports a finding under *TRAC* that the Secretary's actions fit within the rule of reason leading us to conclude that the second factor also favors the Secretary.[16]

---

[14] Judge Allen in his dissent finds that this 8-month period is unreasonable because Mr. Dolphin may endure a delay in the *future* while he is in a queue waiting for a Board decision. Contrary to Judge Allen's assertion that the majority views the rule of reason solely in terms of the 8 months that Mr. Dolphin has been waiting for a Board decision, the Court's conclusion is based on its consideration of the *entire* period that Mr. Dolphin's claims have been on appeal.

[15] Judge Allen's dissent turns the rule of reason factor on its head. Rather than focus on the specific reasons for the delay Mr. Dolphin has experienced in adjudicating his appeal, the dissent is premised on its prediction that Mr. Dolphin will undergo an uncertain future delay.

[16] Judge Allen finds that the lack of congressional timetables for issuing a Board decision does "not cut against" his determination that the rule of reason favors Mr. Dolphin. *Post* at 22. He states that he bases his decision on the fact that Mr. Dolphin had already experienced a 4-year delay in the adjudication of his appeal and that he has no reasonable expectation of when a Board decision will be made in his case. This reasoning is faulty for the same reasons Judge Allen's analysis of the first factor is faulty. Judge Allen makes no finding that the 4-year delay that

### 3. *Delays Where Health and Welfare Are at Stake and Interests Prejudiced by Delay*

The third and fifth *TRAC* factors focus on the veteran's interest, and these two factors often overlap. *Martin*, 891 F.3d at 1346. The third factor considers that "'delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake.'" *Id.* (quoting *TRAC*, 750 F.2d at 80). Mr. Dolphin argues that the third factor favors him because disability claims "'always involve human health and welfare.'" Pet. Jan. 2019 Supp. Br. at 23 (emphasis omitted) (quoting *Martin*, 891 F.3d at 1346). For that reason, the third factor favors Mr. Dolphin. However, the weight to be accorded to this factor is lessened by the fact that Mr. Dolphin has been receiving the highest (100%) level of disability compensation for almost the entirety of his appeal. At this point, the petitioner is contesting the effective date of his claims, but not the monthly compensation to which he is entitled.

The fifth factor, while related to the third, focuses on "the nature and extent of the interests prejudiced by the delay." 891 F.3d at 1346. Thus, this factor considers the effect of the delay on the individual veteran. *Id.* at 1347. Mr. Dolphin does not assert that he is "wholly dependent" on the benefits that would flow from the retroactive grant of his effective-date award to meet his basic needs (such as food, clothing, housing, medical care), and because he does not otherwise provide any information about his own financial circumstances, he has not satisfied his burden to show that he has been prejudiced by the delay. *Cheney*, 542 U.S. at 380-81; *Erspamer v. Derwinski*, 1 Vet.App. 3, 9-10 (1990) (the petitioner has the burden of showing that his right to a writ of mandamus is clear and indisputable).

### 4. *Effect of Expediting Delayed Action*

The fourth *TRAC* factor acknowledges that VA has limited resources and is in a better position than this Court to decide how to use its fixed resources on other VA activities of a higher or competing priority. *See Martin*, 891 F.3d at 1347; *TRAC*, 750 F.2d at 80; *see also Massachusetts v. Envtl. Prot. Agency*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities."). One of the failings in Judge Allen's dissenting opinion is that he does not acknowledge fully the detrimental effect that granting Mr. Dolphin's petition will have on other claimants, because VA "may [have to] shift a finite number of resources from one pending claim to another." *Martin*, 891 F.3d at 1347. Though a shift in the focus of VA's limited resources on addressing the delay in Mr. Dolphin's appeal will benefit him, VA's efforts "may work a detriment to other veterans who are also relying on the VA for various types of assistance." *Id.*

The Court is sympathetic toward veterans such as Mr. Dolphin, who are waiting for a Board decision. But granting Mr. Dolphin's petition will merely shift resources away from adjudicating claims of other veterans who may be in a less favorable position than Mr. Dolphin – who has been receiving compensation benefits at the 100% disability rate for almost the entire duration of his appeal. *See Ebanks v. Shulkin*, 877 F.3d 1037, 1039-40 (Fed. Cir. 2017) (explaining that, in certain

---

Mr. Dolphin has experienced was unreasonable, ignores the fact that he has only been waiting 8 months for a Board decision, and speculates that Mr. Dolphin will face an unspecified delay in the future.

circumstances, granting individual relief to petitioners claiming unreasonable delay in "VA's first-come-first-served queue. . . . may result in no more than line-jumping").

Moreover, if the Court were to grant Mr. Dolphin's petition, his appeal would be advanced ahead of those of other categories of claimants Congress has declared entitled to a higher priority. Mr. Dolphin has been waiting 8 months for a Board decision on his appeal. Because these two VA adjudications are scheduled and decided in docket order, Mr. Dolphin will jump in front of claimants who have earlier docket numbers.[17] Mr. Dolphin's appeal would also be decided before those of claimants whose appeals have been advanced on the docket because they face serious illness or severe financial hardship.[18] And Mr. Dolphin's appeal would bump individuals who are to be granted expeditious treatment because their appeals have been the subject of Board- or Court-ordered remands.[19] Clearly, a writ of mandamus ordering the Secretary to decide Mr. Dolphin's appeal will require VA to disregard its statutory obligations to other veterans. Having considered some of the competing interests that must be weighed against Mr. Dolphin's allegation of unreasonable delay, the Court holds that Mr. Dolphin has not demonstrated that VA should shift its limited resources to his claims and away from the claims of other veterans also awaiting adjudication.

Because the delay complained of here largely results from the complex nature of Mr. Dolphin's appeal, along with what appears to be the unavoidable result of the "practical realities of the burdened veterans' benefits system," the Court concludes that the fourth factor weighs against issuing a writ in Mr. Dolphin's case. *Martin*, 891 F.3d at 1347.

### *5. Bad Faith*

The sixth factor does not favor either party. The petitioners do not allege bad faith on the part of the Secretary. However, *TRAC* makes clear that "[a] writ may be appropriate under the *TRAC* analysis even where there is no evidence of bad faith." *Martin*, 891 F.3d at 1348 (stating that "the Veterans Court need not find 'any impropriety lurking behind agency lassitude' to hold that agency action is unreasonably delayed" (quoting *TRAC*, 750 F.2d at 80)); *Godsey*, 31 Vet.App. at 229 (holding that "[t]he lack of bad faith by the Secretary is, at most, de minimis support for his position").

After looking at the particular VA actions for which Mr. Dolphin asserts unreasonable delay and after analyzing the specific factual circumstances before the Court in light of *Martin*, the Court concludes that, on balance, the *TRAC* factors do not warrant granting Mr. Dolphin's petition for an extraordinary writ. However, in the future, he could seek another writ if there has been an unreasonable delay between the date that his appeal was certified and a Board decision.

---

[17] *See* 38 U.S.C. § 7107(a)(1) (2018) (creating a system where appeals are decided by the Board on a first-in-first-out basis).

[18] *See* 38 U.S.C. § 7107(a)(2) (2018); 38 C.F.R. § 20.900(c)(1) (2018). Mr. Dolphin has not sought to have his appeal expedited by the Board.

[19] *See* Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (requiring the Board to provide expeditious treatment of appeals that have been the subject of a prior Board remand); 38 U.S.C. § 7112 (granting expeditious treatment by the Board of appeals involving a remand from the Court).

## C. Due Process Claims

In *Martin*, the Federal Circuit stated that this Court does not have to perform a separate due process analysis when a petition for a writ of mandamus is based on the allegation of unreasonable delay. 891 F.3d at 1348-49 (stating that, if this Court, "employing the *TRAC* analysis, finds a delay unreasonable (or not unreasonable), it need not separately analyze the due process claim based on that same delay"); *Godsey*, 31 Vet.App. at 230 (adopting the Federal Circuit's analysis in *Martin*). Mr. Dolphin urges the Court to conduct a due process analysis because he asserts that the factors in *TRAC* are different from the due process factors.

Mr. Dolphin argues that the Court should apply the factors set forth in *Federal Deposit Insurance Corp. v. Mallen*, 486 U.S. 230, 242-43 (1988), to determine whether in this case there has been a due process violation.[20] Pet. Jan. 2019 Supp. Br. at 29. The test announced in *Mallen* involves balancing the importance of the private interest and harm delay causes that interest; the justification offered by the Government for the delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken. Yet this test is not appreciably different from the *TRAC* balancing test that the Federal Circuit endorsed in *Martin*.

Moreover, even if the Court were to assume that the *Mallen* test is distinctive, Mr. Dolphin has failed to sustain his burden to prove certain elements under the test. For example, as with the fifth *TRAC* factor, Mr. Dolphin does not provide the Court with information to show how he has been harmed by the delay in the adjudication of his appeal. Further, he does not show the likelihood of mistake in the RO's determination that he is not entitled to an earlier effective date.[21] Other than relying on general Board statistics, he makes no effort to show why the RO's determination in his case was mistaken.

## VI. CONCLUSION

In conclusion, Mr. Dolphin does not show that the delay in his appeal is so egregious that he is entitled to an extraordinary writ of mandamus.

Based on the foregoing, it is

ORDERED that Mr. Briggs and Mr. Wood's motion to dismiss is granted. It is further

ORDERED that Mr. Briggs's, Mr. Wood's, Mr. Coyne's, Mr. Merrick's, Mr. Stokes's, Ms. Obie's, Mr. Monk's, and Mr. Hudson's petitions for extraordinary relief in the form of a writ of mandamus are DISMISSED as moot. It is further

---

[20] There, the Supreme Court reformulated the balancing-factors test announced in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

[21] For example, Mr. Dolphin does not submit his informal claim for disability compensation benefits to refute the RO's statement that he failed to identify the disability benefits he was seeking on his medical treatment claim.

17

ORDERED that Mr. Dolphin's petition is DENIED.

DATED: October 23, 2019


ALLEN, *Judge*, with GREENBERG, *Judge*, concurring in part, and dissenting in part:

I agree with the majority that the pendency of an appeal at the Federal Circuit concerning class certification does not deprive this Court of jurisdiction to adjudicate the individual petitions before us. I also agree that all the petitioners' claims other than those of Mr. Dolphin are moot. Accordingly, I join Parts III and IV of the majority opinion in full.

In contrast, I respectfully dissent from the majority's conclusion that Mr. Dolphin is not entitled to a writ of mandamus. I first set forth the facts concerning Mr. Dolphin's lengthy time before VA. Then, I explain why he is entitled to a writ under governing law. And finally, I provide some more general, brief comments about the Court's treatment of writs seeking relief in the context of extraordinary Agency delay.

## I. Background of Mr. Dolphin's VA Odyssey and the Parties' Arguments

In July 2013, the Board found that Mr. Dolphin's character of discharge from May 1967 to January 1975 was not a bar to benefits. *See* Jan. 14, 2019, Supplemental Brief, Exhibit N. In an August 2014 rating decision, the RO awarded disability ratings for 6 service-connected conditions, all effective February 26, 2014; denied service connection for 4 other conditions; and deferred the matter of entitlement to TDIU. *Id.*, Exhibit O. The RO denied TDIU the following month. *See id.*, Exhibit P. In October 2014, Mr. Dolphin filed an NOD challenging the denial of TDIU as well as 16 determinations from the August 2014 rating decision, including those pertaining to the February 26, 2014, effective date assigned for the service-connected conditions. *Id.*, Exhibit P. The petitioner testified at an RO hearing in March 2015. *See* Respondent's Mar. 15, 2019, Supplemental Brief, Exhibit D.

On January 22, 2018, the day before the Court granted a motion to join Mr. Dolphin and other claimants as petitioners in this matter, the RO issued an SOC deciding 14 matters. January 14, 2019, Supplemental Brief, Exhibit M. The same day, a decision review officer granted (1) earlier effective dates for several claims, (2) increased ratings for several claims, (3) service connection for hearing loss and epilepsy, (4) TDIU, and (5) eligibility for dependents' educational assistance. Respondent's Mar. 15, 2019, Supplemental Brief, Exhibit E. On February 24, 2018, the petitioner filed a VA Form 9, appealing "the effective date for all of the conditions listed on my [SOC]"[22] as well as the effective dates assigned for TDIU, hearing loss, and epilepsy. Petitioner's March 7, 2019, Notice to the Court, Exhibit E. He also requested a videoconference Board hearing. *Id.* On February 7, 2019, the Board notified the petitioner that his appeal had been certified. *Id.,* Exhibit I. On September 25, 2019, the petitioner informed the Court that he had received an August 7, 2019, letter from VA informing him that the Board had placed his appeal on its docket. Petitioner's Sept. 25, 2019, *Solze* Notice at 1. On October 2, 2019, the petitioner responded to a

---

[22] In the January 22, 2018, SOC the RO decreased the petitioner's disability rating for service-connected left lower extremity sciatica, effective April 1, 2016. He does not appear to have appealed this effective date.

Court order explaining that he was withdrawing his hearing request "[i]n an effort to receive a decision as swiftly as possible." Petitioner's Oct. 2, 2019, Response at 1.

At oral argument, the Secretary conceded that VA did not know when the petitioner would receive a videoconference Board hearing. O.A. at 40:15-40:30. The only information provided was that as of the beginning of 2019, VA was conducting Board hearings for those claimants who filed a VA Form 9 in "late 2016." O.A. at 40:40-40:50. The Secretary agreed that it "will be a while" before Mr. Dolphin gets his hearing, and that it could take more than a year after the hearing to receive a decision. O.A. at 40:40-41:30. The Secretary defended this delay by stating that Mr. Dolphin "did not lose his place in line." O.A. at 41:00-41:30.

The petitioners argue generally that a delay of 12 months or longer from NOD to Board decision is "conclusively unreasonable." Petitioner's Jan. 14, 2019, Supplemental Brief at 1 (quoting *In Re Am. Rivers & Idaho Rivers United,* 372 F.3d 413, 419 (D.C. Cir. 2004) ("[A] reasonable time for agency action [even outside of the veterans' context] is typically counted in *weeks or months, not years*." (emphasis added)). However, I note that this categorical claim was made in the context of the putative class claim. As matters stand now, that class has not been certified. *See Monk v. Wilkie*, 30 Vet.App. 167 (2018) (en banc) (*Monk III*). What remains for Mr. Dolphin is a claim that, for him, VA has unreasonably (or unconstitutionally) delayed the adjudication of his claims.

In *Martin v. O'Rourke,* 891 F.3d 1338 (Fed. Cir. 2018), the Federal Circuit instructed this Court to apply the factors set forth in *Telecommunications Research & Action Center v. FCC* (*TRAC*), 750 F.2d 70, 80 (D.C. Cir. 1984) in determining whether to grant a petition alleging agency delay. Despite this holding, the petitioner contends that the Court's application of the *TRAC* factors since *Martin* in nonprecedential decisions has created an insurmountable barrier for veterans who seek relief from the VA adjudicatory delay. *Id.* Mr. Dolphin asks that the Court hold that a delay of more than 4 years in his particular case warrants the issuance of a writ because all six *TRAC* factors favor granting a writ. *Id.* at 18-29.

The Secretary responds that the Court should reject adopting a broad rule finding that 1 year is an unreasonable amount of time for the Board to decide an appeal following an NOD. Secretary's Mar. 15, 2019, Response (Response). The Secretary contends that appellate delay was "caused by the structure of the VA legacy appeals system, development, non-ministerial tasks such as the preparation of SOCs and DRO review." *Id.* at 9. The Secretary argues that starting with a claimant's filing an NOD and ending with the Board issuing a decision comprises not one agency action, but is instead a series of agency and claimant actions, many of which are not merely ministerial. *Id.* at 20. The Secretary contends that the petition is a "broad programmatic attack" on the VA legacy appeals system and the relief requested is outside the limits of mandamus power. *Id.* at 23-24 (citing *Norton v. S. Utah Wilderness All.*, 552 U.S. 55, 64 (2004)). Again, however, these arguments are directed to the class allegations in most respects. Specific to Mr. Dolphin, the Secretary argues that the "rule of reason" weighs against granting a writ for Mr. Dolphin. Response at 24. The Secretary notes that Mr. Dolphin initiated an appeal of 17 separate issues in his October 2014 NOD. He then requested DRO review and his appeal was addressed in the order that it was received. *Id.* at 24. Fourteen of these matters were addressed by the RO in January 2018. *See id.* The Secretary argues that VA has narrowed the appeal to 3 issues that remain on appeal and the

petitioner has not identified any specific action the Agency undertook between the time the NOD was filed and the time the Board issued the decision that is the source of the delay. *See id.*

## II. Mr. Dolphin is entitled to the writ he seeks.

I generally agree with the majority's description of the law concerning how one judges whether a petitioner under the All Writs Act is entitled to relief when claiming unreasonable agency delay. *See* discussion *ante* at 11. For ease of reference I set forth the *TRAC* factors here but otherwise will not repeat the majority's discussion of the legal framework. The six *TRAC* factors are:

> (1) [T]he time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

750 F.2d at 80 (citations omitted).

I believe the majority errs as a matter of law because it adopts a far too restrictive view of how the *TRAC* factors operate. I describe below how I believe the *TRAC* factors apply to Mr. Dolphin's VA journey.

### A. First and Second Factors

In *Martin*, the Federal Circuit observed that the first *TRAC* factor, the "rule of reason," is in some circuits considered the most important factor. 891 F.3d at 1345 (citing *In re A Cmty. Voice*, 878 F.3d 779, 784 (9th Cir. 2017)). I agree that it is and would affirmatively hold that to be the case. In reviewing this factor, the Court must "look at the particular agency action for which unreasonable delay is alleged," *id.* at 1347, adding that "[i]t is reasonable that more complex and substantive agency actions take longer than purely ministerial ones." *Id.* at 1345-46. "The 'rule of reason' analysis may also consider whether the delays complained of are based on complete inaction by the VA, or whether the delays are due in part to VA's statutory duty to assist a claimant in developing his or her case." *Id.* at 1346.

Significantly, the Federal Circuit recognized that "[t]his 'rule of reason' inquiry is best left to the discretion of the Veterans Court." *Id.* In exercising its discretion, I observe that Congress has not provided a timetable, under the second *TRAC* factor, or any other indication of the speed with which it expects VA to adjudicate cases that were part of the legacy system. *See TRAC*, 750 F.2d at 80; *see also Martin*, 891 F.3d at 1345. But this absence of a mandated timeline for resolving claims does not mean that Congress was ambivalent about providing timely resolution of claims for those men and women who served the Nation. In other words, it may be the case that the

20

absence of a mandated timeline requires more in the nature of a delay than might be necessary with a timeline. Whether that is true in the abstract does not absolve VA for the delay at issue here. Moreover, with the enactment of the Veterans Appeals Improvement and Modernization Act, it is reasonable to say that Congress has at the very least implicitly recognized that VA had not been acting fast enough to handle its growing caseload reflecting the claims of worthy veterans and other claimants.

Without congressional guidance, the "rule of reason" is the most difficult factor for the Court to decide. As the Federal Circuit pointed out, mere delay may violate the "rule of reason" for one claimant in the legacy system, but the same delay may be reasonable for a different claimant depending on the procedural history. *See Martin*, 891 F.3d at 1346. The Federal Circuit is correct that the duty to assist can lead to longer and more unpredictable adjudication times. Yet, here, there is no suggestion that the duty to assist is the reason Mr. Dolphin is waiting an unspecified time to receive a Board decision. He is merely waiting his turn in the queue, a type of delay that is "particularly intolerable." *See Godsey v. Wilkie*, 31 Vet.App. 207, 228 (2019) (per curiam order) (citing *Martin*, 891 F.3d at 1346). Indeed, the Secretary's discussion of Mr. Dolphin's claim at oral argument seemed to confirm that Mr. Dolphin is simply standing in line, and a slow moving one at that. In other words, this is not a situation in which delay flows from what an agency is *doing*. Here, delay is the result of total *inaction*.

But concluding that an agency is doing nothing is most decidedly not necessary to finding that the rule of reason has been violated. And concluding that VA took *some* action can't be enough to say that the rule of reason is satisfied. As I note below, I believe the Court today implicitly adopts the erroneous legal rule that any action is sufficient to defend against a claim of unreasonable agency delay.

Moving on, at oral argument, the Secretary was asked when delay would be unreasonable regardless of the reason. O.A. at 34:40-37:30. Although the Secretary refused to concede that a delay of even 100 years (that is, a century -- I did not add an extra zero) would meet this standard, the question of when delay becomes unreasonable must have some answer. "Otherwise the regulatory scheme Congress has crafted becomes anarchic." *See MCI Telecomms. Corp. vs. Fed. Comm'ns Comm'n,* 627 F.2d 322, 325 (D.C. Cir. 1980). Where Congress has not provided a timetable or other indication of the speed which it expects the agency to proceed in the enabling statute, *see TRAC*, 750 F.2d at 80, logic dictates that either the agency or the judiciary must provide clarity for the sake of mitigating the damage caused by a broken appeals process. *See generally, Martin*, 891 F.3d at 1349-52 (Moore, J., concurring) (discussing the deficiencies in the current system of VA adjudication).

The lack of guidelines for legacy claimants has rendered the regulatory scheme for veteran's benefits anarchic. *See MCI Telecomms. Corp.,* 627 F.2d at 322. Mr. Dolphin has no reasonable expectation as to when he might receive a Board decision. This continued delay must be considered in light of the fact that he filed his original claims more than 5 years ago. The majority views the rule of reason in terms of the 8 months Mr. Dolphin has been waiting for a Board hearing. I take a different view in looking at the longitudinal history of his claims over the 4 years.

21

By slicing and dicing Mr. Dolphin's journey, the majority makes it almost impossible to conceive of delay that would be unreasonable. But that approach is decidedly the wrong perspective. Imagine driving from Washington, D.C., to Anchorage, Alaska. Stated that way, it's a long time in the car. But if one looked at that journey in a series of 2-hour blocks, you might say the time in the car is not so bad. But that way of assessing the journey turns a blind eye to the reality of the experience of the person in the car. I don't believe we can ignore the reality of the time Mr. Dolphin has spent on his journey in his VA experience as much as we cannot say a trip in a car from the Nation's capital to Alaska was short.

Furthermore, Congress has established a right to a hearing for veterans – something Mr. Dolphin sought. *See* 38 U.S.C. § 7107. The continued wait times for those hearings to occur places veterans in the unfortunate position of deciding between availing themselves of their right to a hearing and continuing to delay the adjudication of their claims or to forego that right in order to obtain a decision more quickly. Surely, Congress did not mean for the administrative process to obstruct the rights of veterans to be heard at a hearing. But that is precisely what has happened here: the threat of continued delay has forced Mr. Dolphin into foregoing his congressionally mandated right to a Board hearing in the hope that he will be stuck in the endless line he has experienced just a little less time to receive a Board decision. Surely, this situation cannot be reasonable.

I conclude that the "rule of reason" here weighs strongly in favor of granting Mr. Dolphin's writ, and the lack of a congressionally mandated timetable does not cut against this conclusion.

## B. Third and Fifth Factors

The Federal Circuit observed that the third and fifth *TRAC* factors often overlap. *Martin*, 891 F.3d at 1346. I agree. The third factor was summarily resolved with the simple observation that "veterans' disability claims *always* involve human health and welfare." *Id.* (emphasis added). This is a significant observation because it puts at least some part of the metaphorical thumb on the veteran's side of the scale, something that appears to be appropriate in VA's pro-veteran, nonadversarial system.

Under the fifth factor, "the court considers the nature and extent of interests prejudiced by the delay." *Id.* at 1346. The fifth factor focuses on the individual veteran, and how dependent he (or she) is on disability benefits for basic necessities and a sustainable income. *Id.* at 1347.

Mr. Dolphin is in receipt of TDIU benefits. *See* Mar. 7, 2019, Notice to the Court, Exhibit G. He therefore already receives VA compensation on a monthly basis based on his inability to work. Although the Secretary argues that this factor mitigates against the grant of a writ based on the petitioner's receipt of monthly compensation, the record does not contain enough information regarding the petitioner's financial circumstances for me to rule against the petitioner here. Mr. Dolphin's TDIU award was effective December 2, 2013, yet he has not worked since 2008. *See id.* Although he receives VA benefits, there is no information regarding any outstanding debt. It is thus unclear whether the petitioner's benefits qualify as a sustainable source of income. Additionally, the Court has previously rejected the notion that "any and all prejudice resulting from the decade's delay would be offset by retroactive payment should [VA] ultimately determine that

22

benefits were warranted." *Erspamer v. Derwinski*, 1 Vet.App 3, 10 (1990). So, perhaps, this factor is a wash because of the absence of information. But that does not undermine Mr. Dolphin's claim because, as the majority recognizes, these are factors, not elements. *See* discussion *ante* at 11.

Given that the third factor favors all claimants and the fifth factor is indeterminate, I believe that the *TRAC* factors pertaining to the interest of the claimant weigh in favor of granting the petition, and no further financial information is necessary to determine whether a writ is warranted here.

### C. Fourth Factor

The fourth *TRAC* factor requires "consideration of the effect of expediting delayed action on agency activities of a higher or competing priority." *Martin*, 891 F.3d at 1347. This factor "allows the Veterans Court to consider the impact granting of mandamus in a particular appeal may have on other agency activities." *Id.* "VA may consider as one aspect of the overall TRAC analysis the fact that the VA has fixed resources and that the agency is in a better position than the courts to evaluate how to use those limited resources." *Id.* (citing *In re Barr Labs., Inc.* 930 F.2d72, 76 (D.C. Cir. 1991)).

I believe that the fourth factor does not counsel against issuing the writ. The Secretary relies heavily on the development of the new appeals system as evidence that VA *now* prioritizes shortening the backlog of cases at the Board. *See* O.A. at 46:00-47:00. The problem is that some of the oldest pending cases remain in the legacy system in the queue before the Board. Even if the line at the Board were to be shortened by claimants opting into VA's new appeals process, VA simply has not provided a path for the legacy cases that reduces unreasonable delay such as that which we have here.

The majority argues forcefully that granting the petition would allow Mr. Dolphin to unjustly jump the line ahead of other claimants of competing priority. *See* discussion *ante* at 16. I concede that this may be the case in some sense. *See Ebanks v. Shulkin*, 877 F.3d 1037, 1040 (Fed. Cir. 2017). But I'm equally unclear how to assess this reality. If one assumes that VA has unreasonably delayed adjudicating Mr. Dolphin's claim, I'm not sure one can simply rely on the fact that he might "jump" the line to deny him relief. After all, that would seem to mean that an agency could avoid affording appropriate relief to one claimant by unreasonably delaying relief to everyone. It's for that reason that the Federal Circuit indicated that the class action would be the best way to address delay-based claims. *See id.* But this Court already denied class relief in this very case because it held that petitioners did not satisfy the commonality requirement. *See Monk III*, 30 Vet.App. at 175-81. To now turn around and use the fact that one needs to consider the effect on others as the majority does seems rather perverse. I don't see how one can have it both ways.

### D. Sixth Factor

The sixth and final *TRAC* factor focuses on government impropriety. "Under this factor, the Veterans Court need not find 'any impropriety lurking behind agency lassitude' to hold that agency action is unreasonably delayed." *Martin*, 891 F.3d at 1348 (citing *TRAC*, 750 F.2d at 80).

"A writ may be appropriate under the *TRAC* analysis even where there is no evidence of bad faith." *Id.* (citing *In re A Cmty. Voice*, 878 F.3d at 787). "[I]n the unlikely event that an individual could show that the VA 'singled [the individual] out for mistreatment,' such evidence would tend to favor issuance of the writ." *Id.* (quoting *In re Barr Labs., Inc.*, 930 F.2d at 75).

I don't see any evidence of Government impropriety here. The Secretary's actions do not suggest bad faith on the part of the Government, merely an inability to fix the longstanding delays that exist in the legacy system. This factor does not weigh in favor of granting the writ.

### *E. Ultimate Writ Determination*

Having weighed all six factors, I would hold that a writ is warranted here, especially based on the first, third, and fourth *TRAC* factors. The violation of the "rule of reason," together with the health and human welfare at stake, the interests of Mr. Dolphin and the nature of his claims, and VA's inability to provide any meaningful guidance for Board action weigh heavily in favor of granting a writ.[23]

### III. Some Concluding Thoughts

Judge Moore of the Federal Circuit has written forcefully about the problems in VA's adjudication procedures. *See id.* 1349-52 (Moore, J., concurring). This case places a human face on Judge Moore's powerful critique. I fear that the majority's approach to assessing delay-based claims – now enshrined in an en banc opinion – makes illusory the right a veteran has to seek judicial intervention when VA delays in adjudicating his or her claim. Since the Federal Circuit decided *Martin*, the Court has granted only a single writ concerning delay. *See Godsey,* 31 Vet.App. 207. Notably, that case – as important as it is – was limited to a situation where VA was taking no action at all. *Id.* My fear is that the Court today adopts sub silencio the legal rule that total inaction is required before the Court will intervene. That is an error of law in my view.

Congress unambiguously provided that this Court has the power to "compel action of the Secretary unlawfully withheld or unreasonably delayed." 38 U.S.C. § 7261(a)(2). After today's decision, I am not sure how meaningful that right is in practice. I respectfully dissent from the majority's decision to deny Mr. Dolphin's petition.

PIETSCH, *Judge*, dissenting:

I am not certain that the Court presently has jurisdiction necessary to issue a dispositive order in this case. *See George v. Wilkie*, 2019 U.S. App. LEXIS 25498 (Fed. Cir. 2019) (a recent nonprecedential decision reminding us, yet again, to ensure that we have jurisdiction before proceeding even when jurisdiction is not argued in briefing). I am therefore compelled to dissent from this order without reaching the merits of the petitions before us.

---

[23] Because I would grant a writ based on the *TRAC* analysis, I would not address petitioner's constitutional arguments under the Fifth Amendment's Due Process Clause. *See Martin*, 891 F.3d at 1349.

Congress created two paths for a litigant to appeal a matter decided by this Court to the Federal Circuit. In this case, the petitioners chose to appeal under 38 U.S.C. § 7292(a), and the Court allowed them to do so. In my view, that decision was improper, and it has led to insuperable jurisdictional complications that will not abate until the Federal Circuit takes action.

According to section 7292(a), an appellant may appeal a "decision" of this Court "by filing a notice of appeal" in a timely manner. Although this provision does not contain an express finality requirement, the Federal Circuit has concluded that section 7292(a) allows for an appeal only of final decisions of this Court except in the most limited of circumstances. *Williams v. Principi*, 275 F.3d 1361, 1363 (Fed. Cir. 2002). Neither the petitioners nor the Court directly discusses those circumstances.

Pursuant to 38 U.S.C. § 7292(b)(1),

> [w]hen a judge or panel of the Court of Appeals for Veterans Claims, in making an order not otherwise appealable under this section, determines that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that there is in fact a disagreement between the appellant and the Secretary with respect to that question of law and that the ultimate termination of the case may be materially advanced by the immediate consideration of that question, the judge or panel shall notify the chief judge of that determination. Upon receiving such a notification, the chief judge shall certify that such a question is presented, and any party to the case may then petition the Court of Appeals for the Federal Circuit to decide the question. The court may permit an interlocutory appeal to be taken on that question if such a petition is filed within 10 days after the certification by the chief judge of the Court of Appeals for Veterans Claims. Neither the application for, nor granting of, an appeal under this paragraph shall stay proceedings in the Court of Appeals for Veterans Claims, unless a stay is ordered by a judge of the Court of Appeals for Veterans Claims or by the Court of Appeals for the Federal Circuit.

As this provision makes clear, appeals of interlocutory orders must follow a certain procedure and proceed only if the Court allows. The appellate scheme that Congress put in place for this Court mirrors the scheme that applies to district courts. Section 7292(b)(1) is, in fact, a variation on, and borrows numerous passages from, 28 U.S.C. § 1292(b), which applies to "[i]nterlocutory decisions" issued in a "civil action" by a district court. *See Bonhomme v. Nicholson*, 22 Vet.App. 317, 319 (2007) (recognizing that section 7292(b) "is taken almost verbatim" from section 1292(b)). Section 1291 is the rough equivalent of our section 7292(a).

The U.S. Supreme Court has made clear for decades and recently reaffirmed that orders denying class certification "are 'inherently interlocutory,' . . . hence not immediately reviewable under [section] 1291." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1706 (2017) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 470 (1978)). Based on that holding, allowing an appeal of a class certification order under section 7292(a) to proceed is, at best, legally dubious.

More importantly, the Supreme Court has explicitly refused to allow application of the so-called collateral-order doctrine discussed in *Cerullo v. Derwinski*, 1 Vet.App. 97 (1991) and adopted by the Court in this order via *Sumner v. Principi*, 15 Vet.App. 405 (2002) (en banc) (a two-paragraph order that relies on *Cerullo* without discussing it) in the class context. The Supreme Court noted in *Microsoft* that "*Coopers and Lybrand . . .* rejected the collateral-order doctrine as a basis for invoking [28 U.S.C. §] 1291 to appeal an order denying class certification." 137 S. Ct. at 1708 n.3. It further noted that the "collateral-order doctrine applies only to a 'small class' of decisions that are conclusive, that resolve important issues 'completely separate from the merits,' and that are 'effectively unreviewable on appeal from final judgment.' . . . An order concerning class certification, we explained, fails each of these criteria." *Id.* (quoting *Coopers & Lybrand*, 437 U.S. at 468). It seems in this order the Court is acting against Supreme Court precedent by using a doctrine that does not apply to an order denying class certification to forgive the petitioners' decision to appeal under an inappropriate provision and avoid the consequences of its decision to process that appeal rather than return it.

Rule 23(f) was created to provide class certification orders a path to appellate review easier than the path other interlocutory orders must follow; to allow the appellate court to have a say in whether to review the certification question; and to alleviate the harsh results caused by *Coopers & Lybrand*. *Microsoft*, 137 S. Ct. at 1708-09. That rule, however, does not presently apply to this Court except, apparently, by judicial fiat in individual cases, as this order shows. Even if it did, the petitioners plainly did not file a Rule 23(f) petition. (The petitioners' Notice of Appeal is a single-sentence document that demands an appeal without establishing the right to appeal, citing to the appropriate (or any) statute or rule, or asking for permission to appeal.)

Because Rule 23(f) does not presently apply, to obtain review of the Court's decision denying class certification, the Court and petitioners should have followed the procedure set forth in section 7292(b)(1). Furthermore, even if Rule 23(f) does apply, the petitioners did not follow the procedure set forth in that provision. Once again, we should have immediately returned the Notice of Appeal to them. We allowed it to proceed, however, which was a mistake. That has led to convoluted arguments that mesh section 7292(a), section 7292(b)(1), and Rule 23(f) without respecting their individual purposes, deadlines, and bailiwicks.

Ironically, if we had ensured that the petitioners properly followed the procedure set forth in section 7292(b)(1), we would now have jurisdiction to proceed. The Federal Circuit has not issued a stay order and neither have we. However, because we improperly allowed the appeal under section 7292(a), this case is, as far as I am concerned, in jurisdictional limbo. I cannot be certain where jurisdiction currently lies, I am not willing to adopt a Federal Circuit decision that lacks a searching jurisdictional review to smooth over the difficulty, and I fear that the Court is directly contravening the procedure that Congress put into place and Supreme Court precedent.

In what is now a growing list of dissents, I have repeatedly registered my concern about the ad hoc manner in which the Court has handled class certification cases and the legally problematic decisions that inevitably attend such haste. I'm afraid that I must add this decision to that list. Because I cannot be sure that I have jurisdiction to proceed, I will not, and I must respectfully dissent. Also, because I cannot proceed, I take no position concerning any findings that the majority makes beyond its conclusion establishing jurisdiction.